**BAYER, Plaintiff-Appellee, v. AMERICAN SHIPBUILDING CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20383.   Decided November 4, 1946.

Abram M. Kaplan, Cleveland, for Plaintiff-Appellee.
F. M. Secrest, Cleveland, for Defendant-Appellant.

**OPINION**

By HURD, J.

The appellee herein applied for an award under the Workman's Compensaion Act for injury due to "exposure to a very severe and cold rain" alleged to have been sustained in the course of and arising out of his employment while working for the American Ship Building Company, a self-insuring employer under the Workmen's Compensation Act of Ohio. Such claim was disallowed by the Industrial Commission which held on rehearing:

"That the claim be denied on rehearing because proof of record fails to show that the disability suffered by the claimant after Feb. 16, 1942, was the result of an accident sustained in the course of his employment within the meaning of the Workman's Compensation Act."

Upon appeal to the common pleas court of Cuyahoga County, a jury being waived, a favorable judgment was secured by the plaintiff which was in effect a reversal of the holding of the Industrial Commission. The case is now before this court on appeal on questions of law.

It appears from the bill of exceptions that in the performance of his work, the appellee was engaged as a "chipper" in which he used an air hammer and chisel to chip off metal "lugs" while working on a new boat being constructed in the docks of the appellant company in the City of Cleveland. This work was done in the open air. On the morning of February 16, 1942, appellee checked in at 7:58 A. M. When appellee commenced work in the morning it was cloudy and during the course of the morning it started to rain. He described the rain as a "hard rain and very cold." According to a weather report in evidence there was on that day a rain fall of .79 during the 24 hours ending at midnight February 16, 1942 and the mean temperature was 42 degrees.

The appellee testified that in order to do this work it was necessary for him to lie down on a piece of iron and that in doing so he became "wringing wet plumb all the way through." He testified that as a result of the condition of the weather

he began to ache all over and wanted to go home and that he finally did go home checking out at 3:34 P. M.; that when he arrived home he went to bed and sent for a doctor who called on him and prescribed some medicine and instructed him to stay in bed; that the next morning he returned to work at 7:50 A. M. and not feeling well he left again at 8:13 A. M. and returned home and to bed; that he was away from work from February 17, to March 2, 1942, on which date he returned to work and worked regularly until March 18, 1942 a period of something over two weeks during which time he worked eight hours a day. He was absent from work again for about three days and then worked eight hours a day on March 23, 24, 25 and 26, and on the next day, March 27, 1942, he worked only until 10 o'clock in the morning at which time he went back home and to bed for a period of two weeks. On April 20, 1942 he was taken to a hospital.

The attending physician, Dr. Harry L. Bard, testified in substance that he first attended the appellee about the middle of February, 1942 and that the patient then gave him a history of "working down at the shipyards and it was very severe weather and he caught cold." At this time the physician made a diagnosis of "pleurisy with possible pneumonia" contracted because of "exposure and cold." While Dr. Bard did not attend appellee at the hospital it appears from the record that it became necessary to perform an operation known as "thorocotomy" which necessitated the removal of several ribs from the appellee's back in order to operate on his lungs and remove an abscess that had formed there. The record shows that the appellee was then unable to work until some time in October, 1942.

As part of the cross-examination of appellee, the appellant produced weekly claim reports made to the Washington National Insurance Company of Chicago for claims under a health insurance policy. These reports were signed by Dr. Bard who stated therein that the patient quit work on March 28, 1942 and was first confined to his bed March 29, 1942. In two other reports Dr. Bard fixed the date of the first treatment as March 23, 1942, and that the patient was first confined to his bed on March 24, 1942.

In answer to a hypothetical question, Dr. Bard gave it as his opinion that there was a causal relationship between the manner and conditions under which the employee was required to work and the medical findings made by him and that his condition was due to exposure.

Another physician who was called upon to give expert testimony in answer to a hypothetical question gave it as his opinion that the exposure to the wet and cold was certainly

a precipitating factor in the onset of his illness, which later resulted in empyema and necessitated the "thorocotomy." He further testified on cross-examination that where a person develops an infection in the chest due to germs, the question of resistance of the individual is an important factor.

We think the foregoing statement of facts is sufficient for an understanding of the decision in this case.

Despite some doubt naturally arising from the apparent discrepancies of the testimony of the attending physician as to when the illness of pleurisy first developed, we are constrained to give to plaintiff, as the trial court undoubtedly did, the benefit of a most favorable construction of the evidence. In so doing we think that the question fairly presented is whether or not disability arising because of exposure to a hard, cold rain resulting in surgical treatment, constitutes an injury within the scope of the Workmen's Compensation Act. The section of the statute (§1465-68 GC) applicable to the facts, is as follows:

"The term 'injury' as used in this section and in the workmen's compensation act shall include any injury received in the course of and arising out of the injured employee's employment."

This provision of the statute has been construed a number of times by our supreme court and courts of appeals.

From an examination of the authorities, we conclude that there is a line of demarcation between cases where there is merely a health hazard and cases where there is a physical or traumatic injury, accidental in origin and character in the sense of being a sudden mishap occurring by chance and not in the usual course of events. The first mentioned are not compensable unless made so specifically by statute. The latter are compensable in keeping with the intention and purposes of the workmen's compensation act. People are exposed to the elements, particularly rain, in many ways and in all walks of life, and under varying conditions. Unless protected by proper clothing such exposures may result in illness and disease. Because of such exposure people may develop a common cold which in turn may lead to sore throat, tonsilitis, bronchitis, pleurisy, pneumonia or other serious respiratory diseases. The record in this case clearly shows by the testimony of experts that the presence of germs in the system may, because of lowered bodily resistance, result in illness to one person whereas another person because of a higher bodily resistance may suffer no ill effects. Can it be said that in the case of one person whose resistance may be low, lacking the

capacity effectively to combat the presence of germs in the body, that illness in such case may be considered accidental or traumatic? We think not. For the court to extend the workmen's compensation act to insure against general health hazards or to extend to employees benefits commonly accruing to beneficiaries of health policies of insurance would be, we think, tantamount to amending the statute by judicial interpretation and decision, thus violating the age old principle that the duty of courts is "jus dicere and not jus dare" "to interpret the law and not to make law." To enlarge the scope of the statute is exclusively the province of the legislature. It is our conclusion under the state of facts in this case, resolving every doubt in favor of plaintiff, and the law as applied thereto, that the illness or disease suffered by plaintiff appellee being neither accidental or traumatic in origin, is not compensable.

For this conclusion we believe there is unquestioned authority set forth in the cases of:

**Malone v Industrial Commission, 140 Oh St 29.**

**Reynolds v Industrial Commission, 145 Oh St 389.**

**Industrial Commission v Armacost, 129 Oh St 176.**

**Industrial Commission v Cross, 104 Oh St 561.**

**Paxton v Spicer, 45 Oh Ap 339.**

In the Malone case at page 300, the court said:

"To restate the rule under the present statute, the term 'injury' as used in the Workmen's Compensation Act comprehends a physical or traumatic damage or harm, accidental in its origin and character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.

This court is still committed to the proposition that a compensable injury under the Workmen's Compensation Act must be accidental and traumatic in character. This is necessary to differentiate compensable injury from disease which is not compensable unless caused by an injury, and except occupational diseases for which special provision has been made under the law."

In the Reynolds case, the court, quoting the first paragraph of the syllabus in the Malone case, said in part:

"* * * We must perforce recognize that the workmen's compensation act does not afford the same protection as a general health and accident insurance policy, and that a workman claiming compensation under the act must show a situation bringing him within its terms."

In the Paxton case, the court held that death from pneumonia was not compensable under the workmen's compensation act unless proximately caused by physical injury within the course of the employment.

In the Armacost case, the court held there was a distinction between medical and legal trauma and that the medical trauma produced by a microbe coming in contact with an uninjured mucous membrane of the body was not such trauma as was contemplated by the workmen's compensation act.

In the instant case we find neither physical or traumatic damage or harm accidental in origin and character and therefore it is the view of this court 'that the illness for which surgical treatment became necessary was not such as entitled the employee to participate in the workmen's compensation act.

We conclude that the finding of the Industrial Commission was correct and that the decision of the common pleas court was prejudicially erroneous. The judgment of the common pleas court is therefore reversed and final judgment entered for the defendant appellant.

SKEEL, PJ, MORGAN J, concur.