[Cite as *State v. Salem*, 2023-Ohio-2914.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-01-002 |
| | : | O P I N I O N |
| - vs - | | 8/21/2023 |
| | : | |
| FADI SALEM, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRB2001101

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Fadi Salem, appeals the decision, and corresponding nunc pro tunc sentencing entry, issued by the Butler County Area III Court denying his motion to terminate his classification as a Tier I sex offender. For the reasons outlined below, we affirm.

{¶ 2} On October 6, 2020, a complaint was filed charging Salem with one count of third-degree misdemeanor sexual imposition in violation of R.C. 2907.06(A)(1). As set forth in the complaint, the charge arose after Salem had unwanted sexual contact with the victim when, on September 17, 2020, Salem stood behind the victim and "thrusted his pelvic region against her buttocks without her consent." This incident occurred while Salem and the victim were next to the cheese counter inside a Kroger grocery store located in West Chester Township, Butler County, Ohio. Salem was found guilty following a one-day bench trial held on December 12, 2020.

{¶ 3} On February 9, 2021, the trial court held a sentencing hearing. At this hearing, the trial court sentenced Salem to 60 days in jail, all of which was suspended. The trial court also ordered Salem to pay a $500 fine and court costs, told Salem to stay away from the victim, and instructed Salem not go into the Kroger grocery store for a period of two years. The trial court further placed Salem on two years of community control with 30 days of house arrest. Following this pronouncement, the trial court addressed Salem and Salem's defense counsel, Attorney Lawrence Hawkins III, regarding Salem's need to register as a Tier I sex offender. During this exchange, the trial court initially stated:

> THE COURT: Mr. Hawkins, does your client understand that this requires a mandatory registration?
>
> MR. HAWKINS: He does.
>
> THE COURT: Okay. Would you be so kind to—could you review this document with him and obtain his signature?

{¶ 4} The trial court then provided Attorney Hawkins with an explanation of duties form that expressly noted that his client, Salem, was required to register as a Tier I sex offender every year for a period of 15 years.[1] The record contains a copy of the explanation

---

1. The Adam Walsh Act, which was enacted in Ohio in 2007, includes a tier system wherein "offenders are

of duties that was signed by Salem. That form, to the extent necessary, is reproduced below.

1. You have been convicted of or pleaded guilty to a sexually oriented offense and or child victim offense as defined in ORC 2950.01 and you are one of the following (CHECK BOX, CIRCLE EITHER SEX OFFENDER OR CHILD VICTIM OFFENDER):

☑ TIER I Sex Offender/Child Victim Offender Registrant
☐ TIER II Sex Offender/Child Victim Offender Registrant
    ☐ Subject to Community Notification (applies to registrants previously subject to requirement)
☐ TIER III Sex Offender/Child Victim Offender Registrant
    ☐ Not Subject to Community Notification pursuant to ORC 2950.11(F)(2)

2. You are required to register, in person, with the sheriff of the county in which you establish residency within 3 days of coming into that county or if temporarily domiciled for more than 3 days. You are also required to register, in person, with the sheriff of the county in which you establish a place of education immediately upon coming into that county. If you establish a place of education in another state but maintain a residence or temporary domicile here, you are also required to register, in person, with the sheriff or other appropriate official in that other state immediately upon coming into that state. You are also required to register, in person, with the sheriff of the county in which you establish a place of employment if you have been employed for more than 3 days or for an aggregate of 14 days in a calendar year. If you establish a place of employment in another state but maintain a residence or temporary domicile here, you are also required to register, in person, with the sheriff or other appropriate official in that other state if you have been employed for more than 3 days or for an aggregate of 14 days in a calendar year. Employment includes volunteer services.

3. You are required to provide to the sheriff temporary lodging information, including address and length of stay, if your absence will be for 7 days or more.

4. After the date of initial registration, you are required to periodically verify your residence address, place of employment and/or place of education, in person, at the county sheriff's office no earlier than 10 days prior to your verification date.

5. If you change residence address, place of employment and/or place of education, you shall provide written notice of that change to the sheriff with whom you most recently registered, and to the sheriff in the county in which you intend to reside, or establish a place of employment and/or place of education at least 20 days prior to any change and no later than 3 days after change of employment. If the residence address change is not to a fixed address, you shall include a detailed description of the place or places you intend to stay and no later than the end of the first business day immediately following the day you obtain a fixed address, you must register with the sheriff that fixed address.

6. You are further advised, in accordance with Federal Law, you must report any international travel to your registering authority no less than 21 days prior to travel. Failure to do so may subject you to criminal prosecution.

7. You shall provide written notice, within 3 days, of any change in vehicle information, email addresses, internet identifiers or telephone numbers registered to or used by you, to the sheriff with whom you have most recently registered.

8. DEPENDING UPON YOUR DESIGNATION, YOU ARE REQUIRED TO COMPLY WITH ALL OF THE ABOVE-DESCRIBED REQUIREMENTS FOR THE FOLLOWING PERIOD OF TIME AND FREQUENCY (CHECK ONE):

☑ TIER I- for a period of 15 years with in-person verification annually.
☐ TIER II- for a period of 25 years with in-person verification every 180 days.
☐ TIER III –for your lifetime with in-person verification every 90 days.

9. Since your expected residence address as stated above is located in ___BUTLER___ County, you shall register in person no

later than _____ (Date) (3 days after release) with that County Sheriff's Office located at:

_101 HIGH ST_ (Street Address)  _HAMILTON_ (City/State)  _OHIO_  _45011_ (Zip)

10. Failure to register, failure to verify residence at the specified times or failure to provide notice of a change in residence address or other required information as described above will result in criminal prosecution.

11. I acknowledge that the above requirements have been explained to me and that I must abide by all of the provisions of the Ohio Revised Code Chapter 2950.

X _[signature]_  Offender's Signature  02-09-2021  Date

---

classified as Tier I, Tier II, or Tier III sex offenders * * * based solely on the offender's offense." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 21. An individual convicted of sexual imposition in violation of R.C. 2907.06(A)(1) is to be designated as a Tier I sex offender. R.C. 2950.01(E). Tier I sex offenders are required to verify their current address annually for 15 years. See R.C. 2950.06(B)(1) and R.C. 2950.07(B)(3). "The registration and verification requirements of the Adam Walsh Act are punitive and therefore part of the penalty imposed upon a defendant for the sex offense." *State Leonicio*, 12th Dist. Butler No. CA2022-08-077, 2023-Ohio-2433, ¶ 16, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 16; and *State v. Hagan*, 12th Dist. Butler No. CA2018-07-136, 2019-Ohio-1047, ¶ 20.

{¶ 5} The trial court then again addressed Salem and his defense counsel, Attorney Hawkins. The trial court also addressed a deputy with the Butler County Sheriff's Office there in attendance for Salem's sentencing, Deputy Michael Jacobs. During this exchange, the trial court stated:

> THE COURT: Thank you, Mr. Hawkins. Mr. Salem, did you review this with your attorney, Mr. Hawkins?
>
> THE DEFENDANT: (No verbal response.)
>
> THE COURT: I need you to answer out loud, please.
>
> THE DEFENDANT: Yes. Yes, sir.
>
> THE COURT: Okay. And did you understand this form?
>
> THE DEFENDANT. Yes, sir. Yes, sir.
>
> THE COURT: Do you understand you have a mandatory registration requirement?
>
> THE DEFENDANT: Yes. Yes, sir. Yes, sir.
>
> THE COURT. And, [Deputy] Jacobs, do you typically meet with him today or do you set up an appointment?
>
> [DEPUTY] JACOBS: I will meet after this, give him a date where he can respond back.
>
> THE COURT: So you'll meet with [Deputy] Jacobs.
>
> THE DEFENDANT: Okay.
>
> THE COURT: And he's going to advise you what your—how often – where you have to report.
>
> THE DEFENDANT: Okay.
>
> THE COURT: And make sure you follow that requirement, otherwise, you could be charged with a felony offense.
>
> THE DEFENDANT: Yes. Yes.

{¶ 6} The trial court thereafter issued its sentencing entry. The trial court's sentencing entry, however, mistakenly excluded any reference to Salem being designated

- 4 -

as a Tier I sex offender. Shortly thereafter, on February 10, 2021, Salem filed a notice of appeal. Within that notice, Salem noted that his appeal would include an argument alleging "the verdict was not supported by the evidence presented at trial." Approximately eight months later, on October 5, 2021, Salem filed a motion to voluntarily dismiss his appeal. This court thereafter granted Salem's motion and issued an entry dismissing Salem's appeal on October 13, 2021. *State v. Salem*, 12th Dist. Butler No. CA2021-06-064 (Oct. 13, 2021) (Entry of Dismissal).

{¶ 7} On September 28, 2022, Salem filed a motion to terminate his classification as a Tier I sex offender. Salem did this despite being only two years into his annual 15-year registration requirement. Salem filed this motion pursuant to R.C. 2950.15(B). Pursuant to that statute, an "eligible offender" who was classified as a Tier I sex offender may move to terminate his duties to register as a Tier I sex offender upon the expiration of 10 years. The trial court held a hearing on Salem's motion on October 11, 2022. Both Salem and the state were present and participated in this hearing, as did Deputy Jacobs.

{¶ 8} During this hearing, the trial court initially asked Salem's new defense counsel, Attorney Christopher Pagan, whether its reading of R.C. 2950.15(B) was correct in that "it requires you to wait ten years under that code section to terminate, does it not?" To this, Attorney Pagan responded, "I agree, that [R.C.] 2950.15(B) is not a perfect fit," but that it was nevertheless "the only statutory or legal mechanism for declassification."

{¶ 9} The trial court then asked Attorney Pagan whether his argument was essentially that even though Salem had signed an explanation of duties form with a full understanding of what his duties were as a Tier I sex offender, "it's that because it wasn't handwritten on the physical entry that we have in here * * * the specific designation of tier one," that renders his classification unlawful? Attorney Pagan agreed that was the basis of his motion, explaining that:

- 5 -

I had the same issue in the Twelfth District in [*State v. Halsey*, 12th Dist. Butler No. CA2016-01-001, 2016-Ohio-7990] that I cite in my brief. That was a Common Pleas Case where it was a tier three, and not a tier one. The judgment entry did not include the tier three. There was also the notifications that you discussed. And the Twelfth District found that was an improper classification and that there was no registration form.

{¶ 10} Attorney Pagan also stated, albeit later on as the hearing progressed, that he believed "the entry is the determinative issue because the classification registration is punishment and punishment has to be in the judgment entry."

{¶ 11} The trial court responded and stated, "I don't disagree with you that he's required to register so I don't think the officer's testimony is necessary if he's sitting around unless you want to present something from him." To this, Attorney Pagan noted that he still wanted to call Deputy Jacobs to the stand "really briefly," for just "four or five questions," so that he could "perfect the record." Upon Deputy Jacobs taking the stand, Attorney Pagan then asked Deputy Jacobs whether he knew Salem and if Salem was currently registering with him as a Tier I sex offender. Deputy Jacobs responded affirmatively to both questions. Attorney Pagan then had the following exchange with Deputy Jacobs:

Q: All right. And how did you begin that requirement for his supervision for tier one?

A: I received the long form from this court advising that he is a tier one offender, required to register once a year for 15 years.

Q: Did you get the judgment entry, too? Do you know?

A: No.

Q: Just the notification, the long form?

A: Correct.

Q: Is he currently complying with the registration requirements?

A: He is.

{¶ 12} Deputy Jacobs then confirmed that, yes, unless he received an order from the

trial court relieving Salem from registering as a Tier I sex offender, he would charge Salem with failing to register if Salem stopped reporting and instead "took the position that he didn't legally have to register" because he was "improperly classified." The hearing then concluded with the trial court notifying the parties that it would take the matter under advisement and issue a decision no later than 30 days after receipt of the parties' supplemental briefing.

{¶ 13} Approximately two months later, on December 6, 2022, the trial court issued a decision denying Salem's motion to terminate his classification as a Tier I sex offender. In so holding, the trial court noted that Salem's argument was essentially:

> that a court speaks only though its entries, and if a sex offender classification/registration requirement is not contained in a sentencing entry, any order for the defendant to register is void, even if the court told the defendant at the sentencing hearing about the requirement.

{¶ 14} The trial court then noted its disagreement with Salem's argument based upon this court's decision in *Halsey*, a case in which this court held:

> that the omission of a Tier III sex offender classification in a sentencing entry renders the sex offender classification void and may not be corrected after the defendant has completed the journalized sentence, regardless of whether the defendant was properly notified of the Tier III sex offender classification at sentencing.

*Id.*, 2016-Ohio-7990 at ¶ 32. In so doing, the trial court stated:

> In this case, although Salem long ago completed his term of house arrest, he remains on probation. Probation is part of a court-imposed sentence. See R.C. 2929.25(B) (court retains jurisdiction over offender for duration of community control) and 2929.27(A)(6) (non-residential sanction as part of sentence includes term of basic probation supervision). There is no dispute that he was verbally informed at the time of his sentence about his Tier I sex offender classification and his registration duties or that he signed the appropriate form and has since followed those requirements. Accordingly, because Salem has not yet completed his sentence, this court has the authority per *Halsey*, *supra*, to issue a nunc pro tunc entry to formally classify

Salem as a Tier 1 sex offender.

The trial court then, in a separate nunc pro tunc sentencing entry, formally designated Salem as a Tier 1 sex offender effective to the date of Salem's earlier, original February 9, 2021 sentencing hearing.

{¶ 15} On January 3, 2023, Salem filed a notice of appeal. Approximately three months later, on March 28, 2023, Salem filed his appellate brief. The state then filed its answer brief on May 22, 2023, to which Salem filed his reply brief on June 9, 2023. That same day, also on June 9, 2023, Salem filed a motion to supplement the record with a transcript of his original February 9, 2021 sentencing hearing. The state filed no objection to Salem's motion. So, after receiving no objection from the state, this court granted Salem's motion to supplement the record. This court issued that decision on June 23, 2023.

{¶ 16} On July 17, 2023, oral argument was held before this court. Salem's appeal now properly before this court for decision, Salem has raised the following single assignment of error for review.

{¶ 17} THE TRIAL COURT FAILED TO IMPOST A TIER I SANCTION IN THE SENTENCING JUDGMENT. THE STATE FAILED TO APPEAL. AND THE TRIAL COURT LACKED THE AUTHORITY TO MODIFY THE SENTENCING JUDGMENT TO INCLUDE A TIER I SANCTION ON ITS OWN VOLITION AFTER THE CONVICTION BECAME FINAL.

{¶ 18} In his single assignment of error, Salem argues the trial court erred by denying his motion to terminate his classification as a Tier I sex offender. Salem also argues the trial court erred by issuing a nunc pro tunc sentencing entry designating him as a Tier I sex offender effective to the date of his earlier, original February 9, 2021 sentencing hearing. We disagree with both of Salem's claims.

{¶ 19} Prior to addressing the merits of Salem's appeal, however, we must note that

"[a] first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 10, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). This court has consistently applied this principle by finding "a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived." *State v. Keating*, 12th Dist. Clermont No. CA2019-08-064, 2020-Ohio-2770, ¶ 27. "This court has, in fact, found such principle to be well established." *State v. Smith*, 12th Dist. Madison No. CA2021-11-020, 2022-Ohio-2383, ¶ 29, citing *State v. Kirk*, 12th Dist. Clermont No. CA2019-07-053, 2020-Ohio-323, ¶ 25 ("[i]t is well established that a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived").

{¶ 20} The same holds true for new issues presented by a party for the first time in a reply brief and/or during oral argument before this court. *State v. Whitaker*, 169 Ohio St.3d 647, 2022-Ohio-2840, ¶ 52, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18 ("[a]ppellate courts generally will not consider a new issue presented for the first time in a reply brief"); *State v. Dixon*, 12th Dist. Butler No. CA2016-04-074, 2016-Ohio-7438, ¶ 17, fn. 3 (declining to review new issues raised by appellant during oral argument where appellant's arguments were not contained within her appellate brief), citing *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 20 (1st Dist.) ("an issue raised during oral argument for the first time and not assigned as error in an appellate brief is waived"). Applying these principles, we now turn our attention to the merits of Salem's appeal and single assignment of error.

{¶ 21} Salem's argument, the only argument that Salem did not otherwise waive by raising it for the first time on appeal, raising it in his reply brief, or raising it during oral argument before this court, is essentially a claim alleging the trial court erred by denying his

motion to terminate his classification as a Tier I sex offender because the trial court failed to include that part of its sentence within its sentencing entry. However, upon review, and after careful consideration of Salem's argument, we can find no error in the trial court's decision denying Salem's motion to terminate his Tier I sex offender classification on that basis. The same is true as it relates to the trial court's decision to issue the aforementioned nunc pro tunc sentencing entry. Just as the trial court before us, we reach this decision based on this court's prior decision in *Halsey*.

{¶ 22} In *Halsey*, this court was tasked with determining "whether the omission of a Tier III sex offender classification from a sentencing entry may be corrected by a nunc pro tunc entry after the offender has completed the journalized sentence." *Id.*, 2016-Ohio-7990 at ¶ 10. As noted above, answering that question in the negative, this court held:

> the omission of a Tier III sex offender classification in a sentencing entry renders the sex offender classification void and may not be corrected after the defendant has completed the journalized sentence, regardless of whether the defendant was properly notified of the Tier III sex offender classification at sentencing.

*Id.* at ¶ 32.

{¶ 23} "The rationale for this holding is to preserve a legitimate expectation of finality in sentencing." *State v. Brasher*, 12th Dist. Butler No. CA2020-08-094, 2021-Ohio-1688, ¶ 21. This holds true notwithstanding the language found in Crim.R. 36 that "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." *See Halsey* at ¶ 15-16, 19-23, and 32. This is because, "in order for a sanction to commence, it must first be imposed by the sentencing court." *Id.* at ¶ 26. "A sanction is imposed by the sentencing entry, not by what is said on the record during the sentencing hearing." *Id.*

{¶ 24} In this case, however, there is no dispute that Salem had not yet completed

his journalized sentence when the trial court issued the challenged nunc pro tunc sentencing entry designating him a Tier I sex offender. Salem was instead still on community control, and would remain on community control for another 63 days, at the time the trial court issued its nunc pro tunc sentencing entry designating him as a Tier I sex offender. Therefore, unlike this court's decision in *Halsey*, it was not error for the trial court to issue a nunc pro tunc sentencing entry in this case. Salem's claim otherwise lacks merit.

{¶ 25} In reaching this decision, we note our disagreement with Salem's assertion that the trial court's decision to issue a nunc pro tunc sentencing entry was, in effect, the trial court modifying its prior sentencing decision and resentencing him as Tier I sex offender. This is because, contrary to Salem's claim, "the purpose of a nunc pro tunc entry is to have the judgment of the court reflect its true action." *State v. Barnes*, 12th Dist. Warren No. CA2014-03-049, 2015-Ohio-651, ¶ 32. Moreover, "[a] clerical error in a trial court's judgment of conviction entry does not render the sentence imposed upon the offender contrary to law, thus necessitating the offender be resentenced or have the offender appear for resentencing." *State v. Ross*, 12th Dist. Butler No. CA2022-11-110, 2023-Ohio-1421, ¶ 7, citing *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 48.

{¶ 26} Rather than having the offender appear for resentencing, the trial court may instead issue a nunc pro tunc sentencing entry to correct the mistake. *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 45, citing *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13. The trial court is permitted to do this because the sentence originally imposed by the trial court is not being modified or changed in any way. *State v. Van Tielen*, 12th Dist. Brown No. CA2013-11-012, 2014-Ohio-4421, ¶ 10. The only thing being changed is the verbiage used by the trial court in its sentencing entry. Such a change is necessary because, as is well established, "[a] trial court speaks

- 11 -

through its journal entry." *State v. Smith*, 12th Dist. Butler No. CA2020-09-101, 2021-Ohio-2982, ¶ 42, citing *State v. Henderson*, 161 Ohio St.3d 285, 2020-Ohio-4784, ¶ 39. To the extent Salem claims otherwise such an argument lacks merit.

{¶ 27} We also note our disagreement with Salem's assertion that he had, sometime prior to this appeal, ever disputed whether the trial had notified him about his Tier I sex offender classification at his February 9, 2021 sentencing hearing. The record belies Salem's claim. However, even assuming the record did support Salem's assertion, we nevertheless disagree with Salem's underlying argument, i.e., that there exists a specific, talismanic words requirement mandating the trial court expressly state whether an offender was being designated as a "Tier I sex offender," "Tier II sex offender," or "Tier III sex offender," at the offender's sentencing hearing before such designation could be imposed. That is to say, as it relates to the facts of this case, Salem argues the only way the trial court could have properly designated him a Tier I sex offender was to say the words, "Tier I sex offender," at his sentencing hearing.

{¶ 28} Despite Salem's claim, however, we can find nothing in the law that would mandate such a strict "magic words" requirement. This includes both R.C. 2950.03 and 2929.23. We also do not feel it necessary or appropriate for this court to impose such a talismanic measure ourselves. To impose such a requirement would not only ignore the context of the offender's full sentencing hearing, focusing instead on the actual words the trial court used, but it would also serve as a prime example of this court legislating from the bench. But, as the old adage goes, "'the duty of courts is * * * to interpret the law and not to make law.'" *State v. Widmer*, 12th Dist. Warren No. CA2012-02-008, 2013-Ohio-62, ¶ 128, quoting *Bayer v. Am. Ship Bldg. Co.*, 79 Ohio App. 450, 455 (8th Dist.1946). To the extent Salem claims otherwise such argument again lacks merit.

{¶ 29} For the reasons outlined above, Salem's single assignment of error lacks

merit and is overruled. As explained more fully above, we reach this decision because, as the record indicates, the trial court provided Salem with the required notice at his February 9, 2021 sentencing hearing classifying him as a Tier I sex offender. The trial court then included that classification in a nunc pro tunc sentencing entry prior to the conclusion of Salem's journalized sentence. Pursuant to this court's decision in *Halsey*, 2016-Ohio-7990, this was not an error. Therefore, having overruled Salem's single assignment of error, Salem's appeal is denied.

{¶ 30} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.