[Cite as *State v. Creech*, 2024-Ohio-5245.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-05-005 |
| | : | O P I N I O N |
| - vs - | | 11/4/2024 |
| | : | |
| KEVIN M. CREECH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 22CR013853

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Hubler and Woolum Law Co. LPA, and Bridget N. Woolum, for appellant.

**BYRNE, J.**

{¶ 1} Kevin M. Creech appeals from the judgment of the Preble County Court of Common Pleas convicting him of illegal assembly or possession of chemicals for the manufacture of drugs. For the reasons discussed below, we affirm.

### I. Procedural Background

{¶ 2} Creech was indicted for (1) three counts of illegal assembly or possession of

chemicals for the manufacture of drugs in violation of R.C. 2925.041 and (2) one count of disorderly conduct in violation of R.C. 2917.11. All charges except one count for illegal assembly or possession of chemicals for the manufacture of drugs were later dismissed.

{¶ 3} Prior to trial on the remaining count, Creech moved to suppress evidence of items found in his backpack when he was detained and searched by an officer. He argued that the evidence should be suppressed because his initial detention was prolonged without reasonable suspicion and because he was arrested for a misdemeanor that the arresting officer did not personally witness. The trial court denied this motion and allowed the evidence to be used at trial. Also prior to trial, Creech (or his counsel) moved the court to remove his trial counsel and allow him to represent himself, to dismiss the charges against him for violation of his speedy trial rights, and for a finding that he was not competent to stand trial. The trial court denied the first two motions but granted the third, finding Creech incompetent but restorable. After a period of incompetency, Creech was eventually restored to competency and the matter resumed.

{¶ 4} A jury trial commenced on April 17, 2023. On the first day of trial, Creech moved to exclude from evidence testimony by a deputy regarding a statement the deputy had overheard Creech make to his attorney. The trial court denied this motion and allowed the testimony. During trial, Creech moved for a mistrial after a deputy testified about Creech's silence and invocation of his right to counsel before being arrested. Creech argued the testimony violated his Fifth Amendment rights. The trial court denied this motion for a mistrial but struck the deputy's testimony. The trial court also denied Creech's Crim.R. 29 motion for acquittal after the State finished presenting its evidence. Creech did not present any evidence in defense.

{¶ 5} The court then instructed the jury, which deliberated. The jury found Creech

guilty of the single remaining charge of illegal assembly or possession of chemicals for the manufacture of drugs. He was sentenced to five years in prison with the Ohio Department of Rehabilitation and Correction.

{¶ 6} Further details regarding the procedural posture of this case will be discussed below.

{¶ 7} Creech appealed, bringing seven assignments of error.

## II. Factual Background

{¶ 8} The following is a summary of the key trial testimony relevant to this appeal.

### A. Testimony of Major Brad Moore

{¶ 9} Major Brad Moore of the Preble County Sheriff's Office testified that, on February 10, 2022, he received a call from Oleeda Weimer. Weimer, Creech's mother, had custody of Creech's three children, and Major Moore knew her because he coached and supervised the children in sports and social groups such as Girl Scouts. Major Moore testified that Weimer was upset about Creech's behavior in her home. Major Moore could hear a male screaming and yelling in the background during the call. At the time of the call, Major Moore was at the site of a vehicle accident, so he requested the Camden Police Department initially respond to Weimer's call.

{¶ 10} When Major Moore was later enroute to Weimer's home, dispatch notified him that Creech had already left the home. Major Moore asked for Chief Spurlock of the Camden Police Department to look for Creech. Major Moore responded to Weimer's home, investigated, and determined that a crime had been committed. By that point, aware that Chief Spurlock had found Creech, Major Moore eventually told Chief Spurlock to place Creech under arrest. Upon doing so, Chief Spurlock asked Major Moore to come to the location where Creech was placed under arrest.

{¶ 11} When Major Moore arrived, he observed what he believed could be active components of a methamphetamine lab contained within Creech's backpack. Major Moore then radioed for Major Dean Miller and Captain Shane Hatfield of the Preble County Sheriff's Office. When they arrived at the scene, Major Moore transported Creech to the Preble County jail.

**B. Testimony of Chief Matt Spurlock**

{¶ 12} Chief Matt Spurlock of the Camden Police Department testified that he was dispatched pursuant to Major Moore's request. Chief Spurlock observed and recognized Creech walking down the road near Weimer's home. Chief Spurlock asked Creech to stop and talk with him. Creech did so, and Chief Spurlock conducted a pat down. Creech was wearing a backpack, and Chief Spurlock asked Creech to put it down. After Creech did so, Chief Spurlock and Creech began talking. Within one minute, Creech admitted to destroying a television at Weimer's home and said he would pay her for it. Eventually, Major Moore requested that Captain Spurlock place Creech under arrest for criminal damaging.[1]

{¶ 13} After arresting Creech, Chief Spurlock searched Creech's person and removed items from Creech's pockets, including glue sticks, electrical tape, and Sudafed packets wrapped in electric tape. Chief Spurlock then searched the backpack, which contained a smaller backpack, and observed a butane lighter head and a container with tubes coming out of it. Upon finding these items, Chief Spurlock believed the backpack contained a potentially active methamphetamine lab and posed a safety risk. He stopped the search and called for Major Moore to respond to the scene.

{¶ 14} Chief Spurlock testified that when he asked Creech if there was anything

---

1. Chief Spurlock testified as to the nature of the arrest charge at Creech's motion to suppress hearing and not at trial.

active in the bag, Creech shook his head "no."  Hoping to determine if anything in the bag posed a safety risk, Chief Spurlock asked again, but Creech did not answer and instead requested to speak with an attorney.  Creech's counsel objected, and the court struck this testimony and directed the jury to disregard it.

### C. Testimony of Captain Shane Hatfield

{¶ 15} Captain Shane Hatfield of the Preble County Sheriff's Office testified that before the events of this case he received training in identifying and remediating methamphetamine labs from the United States Drug Enforcement Administration and took yearly continuing education classes on the subject.  He had investigated methamphetamine labs and chemicals used in methamphetamine manufacturing approximately forty times. The parties stipulated that Captain Hatfield was an expert in the field of methamphetamine lab identification and remediation.

{¶ 16} On February 10, 2022, Captain Hatfield responded to the scene where Creech was taken into custody.  Major Dean Miller, who also had specialized training regarding methamphetamine labs, responded to the scene as well, but Captain Hatfield was the primary investigator.

{¶ 17} When Captain Hatfield arrived at the scene, Creech's backpack was on Chief Spurlock's cruiser.  Creech was already in custody and sitting in the back of a cruiser. Captain Hatfield put on protective gear and began searching inside Creech's backpack. Inside, Captain Hatfield found "red side cutters," lithium batteries, a glass jar with tubes affixed to its top, butane lighter fluid, and pH strips.

{¶ 18} Much of Captain Hatfield's testimony discussed the process of producing methamphetamine and how the items within Creech's backpack and found on his person are often used together to produce methamphetamine in containers such as the one found

in Creech's backpack. Captain Hatfield acknowledged on cross-examination that none of the items seized had been tested for any kind of methamphetamine production residues and that the items found on Creech's person and within the backpack could not complete the process for making methamphetamine. He also recognized it was not illegal to possess items such as Sudafed or lithium batteries.

### III. Law and Analysis

{¶ 19} We will discuss Creech's seven assignments of error out of the order presented to address the procedural history of this case chronologically.

### A. Chief Spurlock's Jurisdictional Limits

{¶ 20} Creech's first assignment of error states:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS, AS THE OFFICER DID NOT HAVE JURISDICTION TO DETAIN, SEARCH AND ARREST APPELLANT FOR A MISDEMEANOR, COMMITTED OUTSIDE THE OFFICER'S JURISDICTION.

{¶ 21} Creech argues that Chief Spurlock of the Camden Police Department "did not have . . . jurisdiction to detain [Creech] . . . because the offense was committed outside the officer's territorial jurisdiction [of Camden] and the officer did not have authority pursuant to [R.C.] 2935.03(B)." As a result, he argues, the trial court erred in denying the motion to suppress he filed before trial.

{¶ 22} The statute that Creech relies on provides that:

> When there is reasonable ground to believe that an offense of violence . . . has been committed within the limits of the political subdivision . . . in which the peace officer is appointed, employed, or elected, or within the limits of the territorial jurisdiction of the peace officer, a peace officer . . . may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation.

R.C. 2935.03(B)(1). We have summarized R.C. 2935.03(B)(1) as providing that "a law

- 6 -

enforcement officer may make a warrantless arrest of any person who the officer has reasonable grounds to believe has committed an offense of violence within the officer's territorial jurisdiction." *State v. Williamson*, 2004-Ohio-2209, ¶ 22 (12th Dist.). Other subsections of R.C. 2935.03 discuss circumstances under which a peace officer may detain and arrest a person outside the officer's jurisdiction.

**{¶ 23}** The State counters that Creech did not raise this extraterritorial jurisdiction argument below and that he is therefore barred from raising it for the first time on appeal. The State further argues that if Creech had raised this argument below, the State could have presented evidence, such as a "mutual aid agreement between the Village of Camden and the Preble County Sheriff, in which either party had the same powers of enforcement and arrest as if acting within their own jurisdiction." The State contends this evidence would have shown that Captain Spurlock did not act unlawfully in detaining and arresting Creech outside of Captain Spurlock's territorial jurisdiction.[2]

**{¶ 24}** We do not need to delve into the particularities of R.C. 2935.03, law enforcement's jurisdictional limits, or the applicable standard of review because we find that Creech forfeited the issue of whether Chief Spurlock had extraterritorial jurisdiction to arrest Creech. We have reviewed the entire trial court record, and we find no instance in which Creech made an extraterritorial jurisdiction argument, including in his motion to suppress.

**{¶ 25}** Ohio law has long recognized that a motion to suppress "must . . . 'state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the [trial] court on notice of the issues to be decided.'" *State v. Johnson*, 2023-Ohio-1320, ¶ 10

---

2. "A Mutual Aid Pact is, in essence, an agreement between contiguous municipalities. It requires that, under specified circumstances, one municipality may request and receive aid from an adjoining municipality. It allows a municipality's police officer to respond to an out-of-jurisdiction request for aid, when the request is made by a command officer of the adjoining municipality." *Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 226 (1988).

(12th Dist.), quoting *State v. Shindler*, 70 Ohio St.3d 54, 58, (1994). Failure to raise an issue in a motion to suppress will result in that issue being waived. *State v. Peagler*, 76 Ohio St. 3d 496, 500 (1996); *State v. Walton*, 2021-Ohio-3958, ¶ 21 (12th Dist.). The reason for this is to place the prosecution and the court on notice of issues that need to be addressed. *Shindler* at 58.

{¶ 26} In his motion to suppress and post-suppression-hearing memorandum, Creech's arguments focused on the duration of the police stop that preceded his arrest and on the fact that Chief Spurlock purportedly had to wait too long for Major Moore to authorize Spurlock to arrest Creech. That is different from arguing, as Creech does now, that Chief Spurlock was entirely prohibited by R.C. 2935.03 from effectuating an arrest outside of his territorial jurisdiction. Indeed, R.C. 2935.03 was not mentioned at all in Creech's motion to suppress, at the suppression hearing, or in his post-hearing memorandum. In addition, Creech affirmatively stated in his motion to suppress that he "*does not* argue that the initial detention [by Chief Spurlock] was illegal." (Emphasis added.) The record makes clear that Creech failed to raise the issue of extraterritorial jurisdiction at the trial level. He therefore forfeited the issue on appeal. *Johnson* at ¶ 10; *Shindler* at 58.

{¶ 27} We overrule Creech's first assignment of error.

**B. Exclusion of Evidence Found in Backpack**

{¶ 28} Creech's second assignment of error states:

> THE TRIAL COURT ERRED IN FAILING TO EXCLUDE THE EVIDENCE FOUND IN APPELLANT'S BACKPACK, PURSUANT TO OHIO'S EXCLUSIONARY RULE AS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE US CONSTITUTION AND SECTION 14, ARTICLE 1 OF THE OHIO CONSTITUTION.

{¶ 29} Creech argues that the trial court erred in denying his motion to suppress the evidence found in his backpack because the evidence was obtained in violation of the

Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution. Specifically, he argues that Chief Spurlock lacked reasonable suspicion to detain him and probable cause to arrest him.[3]

### 1. Applicable Law

{¶ 30} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures. *State v. Dunn*, 2022-Ohio-4136, ¶ 16 (12th Dist.). "Any searches or seizures that occur 'outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). One of the common exceptions to the warrant requirement is an investigative stop, known as a *Terry* stop. *Id.* citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Under *Terry*, an officer "may detain an individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts, that criminal activity is afoot." *Dunn at ¶ 16*, citing *Terry* at 21. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981).

{¶ 31} "Reasonable articulable suspicion is 'something more than an undeveloped suspicion or hunch' but is less than the level of suspicion required for probable cause." *Dunn* at ¶ 17, quoting *State v. Hinkston*, 2020-Ohio-6903, ¶ 18 (12th Dist.). "Reasonable articulable suspicion exists when there are specific articulable facts which, taken together

---

3. We note that in making his argument, Creech again references the extraterritorial jurisdiction argument raised in his first assignment of error. We need not address Creech's references to extraterritorial jurisdiction because we have already found that issue to be forfeited.

with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 2015-Ohio-4655, ¶ 10 (12th Dist.), citing *State v. Bobo*, 37 Ohio St. 3d 177, 178 (1988). "Reasonable and articulable suspicion is determined by evaluating the totality of the circumstances through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Dunn* at ¶ 17. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002), quoting *Cortez* at 418.

{¶ 32} A higher standard—probable cause—applies to warrantless arrests. An officer must have probable cause that an offense has been committed by an individual before arresting the individual without a warrant. *State v. Hipsher*, 2023-Ohio-3750, ¶ 20 (12th Dist.), citing *State v. Timson*, 38 Ohio St.2d 122, 127 (1974); *State v. Thomas*, 2006-Ohio-6612, ¶ 8 (12th Dist.). "[P]robable cause is viewed under an objective standard and is present where, under the facts and circumstances within an officer's knowledge, a reasonably prudent person would believe that the arrestee has committed a crime." *Id.*, citing *State v. Willis*, 2013-Ohio-2391, ¶ 25 (12th Dist.). In other words, "[w]hen a warrantless arrest is challenged on constitutional grounds, the court must determine whether the facts known to the officers at the time of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." (Cleaned up.) *State v. Jordan*, 2021-Ohio-3922, ¶ 19. "An arrest that is based on probable cause is a reasonable intrusion under the Fourth Amendment . . . whereas an arrest that is not supported by probable cause constitutes an unreasonable seizure . . ." *Jordan* at ¶ 19, citing *United States v. Robinson*, 414 U.S. 218, 235 (1973) and *Donovan v. Thames*, 105

F.3d 291, 297-298 (6th Cir.1997).

{¶ 33} "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 2020-Ohio-6773, ¶ 14; see also *State v. Massey*, 2022-Ohio-100, ¶ 36 (12th Dist.); *State v. Hipsher*, 2023-Ohio-3750, ¶ 8 (12th Dist.). "An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. However, an appellate court independently determines, without deference to the trial court's decision, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Massey* at ¶ 36; see also *Turner* at ¶ 14.

{¶ 34} With certain exceptions not applicable here, the Ohio Supreme Court has held that the Ohio Constitution affords coextensive protections with the Fourth Amendment. *State v. Robinette*, 80 Ohio St.3d 234, 245; *State v. Brown*, 2015-Ohio-2438, ¶ 23. Accordingly, we apply the same Fourth Amendment analysis to Creech's claims concerning Article I, Section 14 of the Ohio Constitution. See *Dunn* at ¶ 18.

## 2. Analysis

{¶ 35} Chief Spurlock had reasonable suspicion to briefly detain Creech. At the time Chief Spurlock initially detained Creech, he knew there was a report of a domestic disturbance involving Creech at Weimer's home. As he drove near Weimer's address, Chief Spurlock observed and recognized Creech walking down a nearby rural road. Chief Spurlock therefore had reasonable suspicion to briefly detain Creech under the belief that criminal activity may have occurred during the domestic disturbance at Weimer's home.

{¶ 36} After detaining Creech, Chief Spurlock quickly gained probable cause to arrest him. Under R.C. 2909.06, it is a second-degree misdemeanor to knowingly "cause or create a substantial risk of physical harm to any property of another without the other person's consent." In turn, "[a] person acts knowingly, regardless of purpose, when the

person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Soon after Chief Spurlock stepping out of his vehicle to talk to Creech, Creech admitted to breaking a television in Weimer's house and said he would pay her for it. This admission, in addition to what Chief Spurlock knew when he initially detained Creech, gave Chief Spurlock probable cause to believe that Creech had knowingly caused harm to property in Weimer's home without her consent. Therefore, Chief Spurlock had grounds to arrest Creech.

{¶ 37} We overrule Creech's second assignment of error.

### C. Denial of Creech's Motions to Represent Himself

{¶ 38} Creech's sixth assignment of error states:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S PRO-SE MOTIONS TO REPRESENT HIMSELF.

{¶ 39} Creech argues that "[t]he trial judge did not inquire with the appellant as to his request to represent himself and therefore the appellant's constitutional right to counsel was violated."

### 1. Procedural Background

{¶ 40} On August 3, 2022, while Creech was in custody awaiting trial, his trial counsel requested a competency evaluation of Creech. Creech then requested new counsel, and although that request was initially denied, Creech was granted new counsel on August 23, 2022.

{¶ 41} A competency hearing was held on September 12, 2022, and Creech was found incompetent but restorable. While deemed incompetent, Creech made three written requests—filed on October 24, November 1, and November 10, 2022—for the trial court to remove his trial counsel and to permit Creech to represent himself.

- 12 -

**{¶ 42}** On December 19, 2022, the trial court found Creech was restored to competency. At the same time, the court denied Creech's motions to represent himself, noting that Creech still had an attorney and that the motions were filed while he was incompetent. A pretrial conference was held on January 4, 2023 at which Creech's counsel stated Creech no longer wanted to represent himself.

### 2. Applicable Law

**{¶ 43}** "The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to represent himself at trial." *State v. Johnson*, 2016-Ohio-7266, ¶ 47 (12th Dist.), citing *Faretta v. California*, 422 U.S. 806, 816 (1975). A defendant may waive the right to counsel only if he does so "knowingly, intelligently, and voluntarily . . . ." Ohio Crim. R. 44(A); *Johnson* at ¶ 47, citing *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004). "To establish an effective wavier of the right to counsel, 'the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right.'" *Johnson* at ¶ 47, citing *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph two of the syllabus.

**{¶ 44}** Additionally, under R.C. 2945.37(G), "[a] defendant is presumed to be competent to stand trial." However, when "the defendant's present mental condition [makes] the defendant . . . incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial . . ." *Id.* This protects a defendant's right to a fair trial. *State v. Berry*, 72 Ohio St.3d 354, 359 (1995). When the defendant is restored to competence, proceedings against him may resume. R.C. 2945.38(B); *see also State v. Upshaw*, 2006-Ohio-4253, ¶ 16.

### 3. Analysis

{¶ 45} Creech's sixth assignment of error is without merit for multiple reasons. First, his motions to remove his trial counsel and to represent himself were filed while he was incompetent. During the time when Creech was deemed incompetent, the proceedings against him were halted, and the trial court could not consider the motions. *See id.* Second, even if the court could have considered the motions, Creech's inability to understand the proceedings rendered him incapable of knowingly, intelligently, and voluntarily waiving his right to counsel. *State v. Lawson*, 2021-Ohio-3566, ¶73-74, quoting *Godinez v. Moran*, 509 U.S. 389, fn. 12 (1993). Third, even if the trial court erred in denying the motions (which it did not), there was no prejudice to Creech because he later indicated he wanted to retain his attorney at the pretrial conference held on January 4, 2023.

{¶ 46} We overrule Creech's sixth assignment of error.

### D. Denial of Motion to Dismiss for Speedy Trial Violations

{¶ 47} Creech's seventh assignment of error states:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL VIOLATIONS.

{¶ 48} Prior to trial, Creech moved to dismiss for speedy trial violations, and the trial court denied the motion. Creech argues the trial court made two errors in its speedy trial calculation. First, Creech argues there was no tolling of speedy trial time between December 19, 2022 and January 13, 2023 because the trial court denied all of Creech's pro se motions on December 19, 2022. Secondly, Creech argues that taking three months to rule on his January 13, 2023 motion to dismiss was prejudicial to him. As a result, Creech argues, his rights to a speedy trial under R.C. 2945.71, Article 1, Section 10 of the Ohio Constitution, and the Sixth Amendment to the United States Constitution were denied.

### 1. Procedural Background

{¶ 49} Creech was arrested on February 10, 2022. On April 20, 2022, Creech filed

a motion to continue the initial trial date of April 25, 2022. That motion was granted, and the trial was continued until May 31, 2022. On May 16, 2022, however, Creech filed a motion to suppress. Notably, because that motion was filed out of time, Creech asked for and received leave to file the motion. Creech's May 31, 2022 trial date was also vacated so the motion to suppress could be considered. A hearing on the motion to suppress was held on July 6, 2022, and the court denied the motion on July 18, 2022. By July 18, 2022, Creech had multiple other charges filed against him, including those in Eaton Municipal Court Case No. CRB2200390 and Preble County Case No. 22CR013945.

{¶ 50} On August 3, 2022, Creech's attorney filed a motion for a competency evaluation. The motion was heard on September 12, 2022, and on September 14, 2022, the court found Creech incompetent to stand trial. On December 19, 2022, the court held another competency hearing, found Creech competent, and denied his pro se filings.

{¶ 51} On January 13, 2023, Creech filed a motion to dismiss on the basis that he had been denied his right to a speedy trial. The State filed its response on January 27, 2023, but the motion was not decided until April 12, 2023. The trial court found that at that time, Creech had 47 days remaining before a speedy trial violation would occur.

{¶ 52} Previously, on January 4, 2023, the trial court had set a jury trial for February 7, 2023, but Judge Charles L. Pater stated he was going to recuse himself from the case and have another judge appointed. Judge Pater was the second judge on the case, as the first judge, Judge Stephen R. Bruns, had also previously recused himself. February 7 came and went, but another judge was not appointed to the case. On March 1, 2023, with the consent of Creech and counsel, Judge Bruns agreed to come back and hear the case. The trial was set for April 17, 2023. In a separate nunc pro tunc entry on April 12, 2023, the trial court noted that Creech's speedy trial time was tolled between February 7, 2023 and April

- 15 -

17, 2023.

{¶ 53} Creech's trial was held on April 17, 2023, 430 days after the day he was arrested.

## 2. Standard of Review and Applicable Law

{¶ 54} The Sixth Amendment to the United States Constitution as well as Article 1, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. *State v. Adams*, 2015-Ohio-3954, ¶ 87-88. "To determine whether a defendant has been deprived of these constitutional speedy-trial rights, a court must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of a speedy-trial right, and (4) the prejudice to the defendant." *Id.* at ¶ 88. "The first factor, the length of the delay, is a 'triggering mechanism,' determining the necessity of inquiry into the other factors." *State v. Triplett*, 78 Ohio St.3d 566, 569 (1997), quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530. We have previously held that "[p]ost-accusation delay approaching one year is generally found to be presumptively prejudicial." *State v. Kolle*, 2022-Ohio-2459, ¶25 (12th Dist.).

{¶ 55} In keeping with these constitutional mandates, R.C. 2945.71(C)(2) states that an individual charged with a felony shall be brought to trial within 270 days of their arrest. "When computing any period of time prescribed by an applicable statute, the date of the act or event from which the period begins to run is not included." *State v. Alexander*, 2009-Ohio-1401, ¶ 18 (4th Dist.), citing *State v. Staffin*, 2008-Ohio-338, ¶ 9 (4th Dist.); R.C. 1.14; Crim.R. 45(A). Thus, the day of a defendant's arrest does not count toward this total. Ohio Crim. R. 45(A); *State v. Burgess*, 2004-Ohio-4395, ¶ 47 (11th Dist.). Every day a defendant

is in jail is counted as three days. R.C. 2945.71(E). Importantly, however, this three-day rule applies "only when the defendant is being held in jail solely on the pending charge." *State v. Sanchez*, 2006-Ohio-4478, ¶ 7, citing *State v. MacDonald*, 48 Ohio St.2d 66 (1976), paragraph one of the syllabus.

{¶ 56} R.C. 2945.72 provides that:

> The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
> …
>
> (B) Any period during which the accused is mentally incompetent to stand trial or during which the accused's mental competence to stand trial is being determined . . .;
> …
>
> (E) Any period of delay necessitated by reason of a . . . motion . . . instituted by the accused; [and]
> …
>
> (H) The period of any continuance granted on the accused's own motion . . .

"The rationale supporting speedy-trial legislation is to prevent inexcusable delays caused by indolence within the judicial system." *Sanchez* at ¶ 8, citing *State v. Ladd*, 56 Ohio St.2d 197 (1978).

{¶ 57} "Appellate review of speedy-trial issues involves a mixed question of law and fact." *State v. Kolle*, 2022-Ohio-2459 at ¶ 13, citing *State v. Long*, 2020-Ohio-5363, ¶ 15. The trial court's findings of fact will be deferred to when "supported by competent, credible evidence," but application of those facts to the law is done de novo. *Id.*

### 3. Analysis

{¶ 58} Although Creech's trial occurred more than one year after his arrest, the delays to the trial date were reasonable. The most prominent of these delays were periods of time attributable to the court's consideration of Creech's motion to suppress (which was

- 17 -

filed out of time), the court's evaluation of Creech's competency, Creech's period of incompetency, and the court's consideration of Creech's speedy trial motion after a period during which the court worked to find a new judge to preside over Creech's case.

{¶ 59} Turning to Creech's statutory arguments, we agree, upon review, with Creech's argument that his speedy trial time was not tolled between December 19, 2022 and January 13, 2023. As stated within Creech's sixth assignment of error, the trial court denied all of Creech's pro se motions on December 19, 2022. As a result, there was no motion that tolled the speedy trial time between then and January 13, 2023 when Creech filed his speedy trial motion. R.C. 2945.72(E).

{¶ 60} However, we disagree with Creech's argument that the period of time the trial court considered and then ruled on Creech's motion to dismiss—which ruling came 75 days after the motion was ripe for decision—was prejudicial. At the time the motion was filed, there was no judge assigned to the case as Judge Pater had recused himself on January 4, 2022. Additionally, the State filed its reply on January 27, 2023 as ordered by the court. It was not until March 1, 2023 that Judge Bruns agreed with counsel and Creech to come back to the case and preside over the trial. Given this series of events, we find the delay in deciding the motion to dismiss reasonable.

{¶ 61} We also note that despite those setbacks, the court still decided the motion within 120 days, the guideline for decisions on motions set by the Supreme Court of Ohio in Ohio Sup. R. 40(A)(3). *See also*, *State v. Nelson*, 2009-Ohio-555, ¶ 22 (12th Dist.). While this rule neither creates nor takes away any substantive or procedural rights of a criminal defendant, it does serve as a useful guideline to promote "prompt disposition of all causes, at all times, in all courts of this state." Sup.R. Preface.; *State v. Akladyous*, 2023-Ohio-3105, ¶ 33 (12th Dist.).

{¶ 62} Based on the facts and examination discussed above, the relevant dates for our analysis are as follows:

1. February 10, 2022, was the day of Creech's arrest. Time began to run for speedy trial purposes the day after his arrest. R.C. 1.14; Ohio Crim. R. 45(A); *Burgess*, 2004-Ohio-4395 at ¶ 47. Because Creech was in jail on only the charges at issue in this case at this time, the "triple count" rule applied. R.C. 2945.71(E).

2. On April 20, 2022, Creech filed a motion to continue the trial. Creech's speedy trial time stopped running on the date he filed this motion. R.C. 2945.72(E), (H). April 20, 2022 was 69 days after the date of Creech's arrest. R.C. 1.14; Ohio Crim. R. 45(A); *Burgess*, 2004-Ohio-4395 at ¶ 47. However, the *"triple count"* rule applied because Creech was in jail during this period of time, meaning *207 days had elapsed for speedy trial purposes as of April 20, 2022*. R.C. 2945.71(E). The trial court granted the motion to continue the trial and reset the trial for May 31, 2022.

3. On May 16, 2022, Creech filed his motion to suppress, and the May 31, 2022 trial date was vacated. As Creech had requested a continuance of the prior trial date and the new trial date had not yet arrived, Creech's speedy trial time had not yet resumed. R.C. 2945.72(E). *Creech's speedy trial time thus remained stopped at 207 days as of May 16, 2022*. R.C. 2945.72(E).

4. On July 18, 2022, the trial court denied Creech's motion to suppress. As a result, and because a new trial date had not yet been set by the court, Creech's speedy trial time—*still 207 days at this point*—began to accrue

again. *See generally* R.C. 2945.71, R.C. 2945.72. However, because Creech had been charged with additional offenses in separate cases by this date, the "triple count" rule did not apply. R.C. 2945.71(E); *Sanchez*, 2006-Ohio-4478, ¶ 7.

5. On August 3, 2022, Creech's attorney filed a motion for a competency evaluation. This caused Creech's speedy trial time to stop running again. R.C. 2945.72(B). Sixteen days transpired between July 18, 2022 and August 3, 2022, meaning *Creech's speedy trial time through August 3, 2022 was 223 days.* R.C. 1.14; Ohio Crim. R. 45(A); *Burgess*, 2004-Ohio-4395 at ¶ 47.

6. On September 14, 2022, the trial court found Creech incompetent. *Creech's speedy trial time remained stopped at 223 days.* R.C. 2945.72(B).

7. On December 19, 2022, the trial court found Creech competent and denied his pending pro se motions. *Creech' speedy trial time—223 days at this point—began to accrue again. See generally*, R.C. 2945.71, R.C. 2945.72.

8. On January 13, 2023, Creech's attorney filed a motion to dismiss due to the violation of his state and federal speedy trial rights. As a result, Creech's speedy trial time again stopped running. R.C. 2945.71(E). Twenty-five days transpired between December 19, 2022 and January 13, 2022, meaning *Creech's speedy trial time then totaled 248 days.* R.C. 1.14; Ohio Crim. R. 45(A); *Burgess*, 2004-Ohio-4395 at ¶ 47.

9. On April 12, 2023, the trial court denied Creech's motion to dismiss. As a result, *Creech's speedy trial time-still 248 days at this point- began to*

*accrue again. See generally*, R.C. 2945.71, R.C. 2945.72.

10. On April 17, 2023, Creech's jury trial began. Five days transpired between April 12, 2023 and April 17, 2023, meaning *Creech's speedy trial time through April 17, 2023 totaled 253 days*. R.C. 1.14; Ohio Crim. R. 45(A); *Burgess* at ¶ 47.

**{¶ 63}** We thus find that, in total, 253 days of Creech's 270 speedy trial limit had accrued by the time of trial. Creech's right to a speedy trial under the United States and Ohio constitutions was not violated.

**{¶ 64}** We overrule Creech's seventh assignment of error.

### E. Creech's Motion for Mistrial

**{¶ 65}** Creech's third assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR A MISTRIAL AFTER THE STATE SOLICITED TESTIMONY REGARDING APPELLANT'S POST-ARREST, PRE-MIRANDA SILENCE AND REQUEST FOR COUNSEL, IN VIOLATION OF THE FIFTH AMENDMENT TO THE US CONSTITUTION.

**{¶ 66}** Creech next argues that Chief Spurlock's testimony about Creech's silence and desire to speak with counsel should have resulted in a mistrial because such statement violated Creech's Fifth Amendment rights. Creech also argues separately within this assignment of error that the trial court's remedial instruction did not go far enough because the court failed to advise the jury that Creech had a constitutional right to counsel. Creech also notes that the trial court's instructions to the jury were presented out of order at the end of trial because the court had to correct its original omission of Creech's right not to testify.[4]

### 1. Background

---

4. Creech also argues that the purported mistakes mentioned in Creech's third and fourth assignments of error, together, constituted reversible cumulative error. We will address this argument in Section G below.

{¶ 67} As previously mentioned, Chief Spurlock testified at trial that when he asked Creech about the contents of the backpack and if anything in the backpack posed a safety threat, Creech remained silent before requesting an attorney. Creech's trial attorney immediately objected to that testimony, citing Creech's constitutional right to counsel, and requested a mistrial. The trial court denied the request for a mistrial and, at the State's behest, struck the testimony regarding Creech's request for an attorney from the record and ordered the jury to disregard that testimony.

{¶ 68} The trial judge then brought counsel to the bench and told counsel he did not want to over emphasize or explain to the jury why he was instructing them this way. The Court then asked counsel if there was anything else they wanted the court to say, and Creech's counsel replied in the negative.

{¶ 69} At the end of trial, the trial court initially failed to instruct the jury on a criminal defendant's right not to testify at trial. After providing all other instructions to the jury, Creech's attorney brought that omission to the court's attention. The court then instructed the jury on Creech's right not to testify and also admonished the jury that even though this instruction was mentioned separately from the other instructions, it had no more importance than any other instruction.

## 2. Applicable Law

{¶ 70} The Fifth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, states that no one "shall be compelled in any criminal case to be a witness against himself." *State v. Leach*, 2004-Ohio-2147, ¶ 11. The amendment enshrines an individual's right to remain silent and to request an attorney when questioned by law enforcement while in custody because an individual's statements in such circumstances "are presumed involuntary, and therefore inadmissible, unless proper

procedural safeguards have been taken to protect the privilege." *Id.*, at ¶ 12. As a result, the State is prohibited from using an individual's silence or invocation of the right to speak with counsel as substantive evidence of guilt. *Id.* at ¶ 38.

{¶ 71} On a separate note, courts have consistently held that "[c]urative instructions 'are presumed to be an effective way to remedy errors that occur during trial.'" *State v. Tyree*, 2017-Ohio-4228, ¶ 16 (12th Dist.), quoting *State v. Trzeciak*, 2015-Ohio-2219, ¶ 24 (12th Dist.). As the United States Supreme Court has observed, "Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed." *Parker v. Randolph*, 442 U.S. 62, 73 (1979), *abrogated on other grounds by Cruz v. New York*, 481 U.S. 186 (1987).

### 3. Analysis

{¶ 72} We find the trial court did not err in denying Creech's motion for a mistrial and sufficiently instructed the jury. The trial court's instruction to the jury to disregard Chief Spurlock's testimony regarding Creech's request for an attorney came immediately after the testimony was given and an objection was raised by Creech's counsel. Ultimately, the testimony had no opportunity to be used as substantive evidence. Further, the trial court explained to counsel that it did not want to over-emphasize why it was instructing the jury in this manner, presumably to not complicate a concise and clear instruction to disregard the testimony. The court asked counsel if there was anything else they wanted the court to tell the jury, and Creech's counsel replied in the negative. Finally, although the trial court initially failed to mention Creech's right not to testify at trial while instructing the jury, this omission was promptly remedied by the trial court.

{¶ 73} Ultimately, while delivery of the Court's instructions to the jury may not have

been flawless, Creech has failed to overcome the presumption that the trial court's instructions were followed by the jury. Courts have consistently held that a criminal defendant is entitled to a fair trial, not a perfect one. *State v. Carpenter*, 2023-Ohio-2523, ¶ 95 (12th Dist.), citing *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990), *United States v. Hasting*, 461 U.S. 499, 508 (1983).

{¶ 74} We overrule Creech's third assignment of error.

### F. Impermissible Character Evidence

{¶ 75} Creech's fourth assignment of error states:

> THE TRIAL COURT ERRED IN PERMITTING IMPERMISSIBLE CHARACTER EVIDENCE PURSUANT TO EVIDENCE RULE 404(B); THE ADMISSION OF SAID EVIDENCE WAS MORE PREJUDICIAL THAN PROBATIVE.

{¶ 76} Creech argues admission of his purported confession was impermissible under Ohio Evid.R. 404(B).

### 1. Background - Testimony of Deputy Tyrell Chellis

{¶ 77} Deputy Sheriff Tyrell Chellis, who works at the Preble County Jail, testified at Creech's trial. Deputy Chellis testified that on April 11, 2023, approximately one week before Creech's trial, he brought Creech to the courtroom for pretrial proceedings. While there, Deputy Chellis heard Creech say to his attorney, "[I] make meth . . . [I am] going to continue to make meth, that's what [I do]. Once [I] leave[ ], [I am] gonna [sic] make meth again."

{¶ 78} The day of trial, Creech filed a motion in limine to prevent the State from allowing Deputy Chellis to testify regarding the statement he overheard. In that motion, Creech argued that the statement should be excluded at trial because it was protected by attorney-client privilege. The trial court denied the motion in limine, finding the statements "were clearly overheard by Deputy Chellis," meaning Creech had waived any attorney-client

privilege.

## 2. Applicable Law and Analysis

{¶ 79} Under Evid.R. 404(B)(1), "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at (B)(2). In addition, an "Admission by [a] Party-Opponent," i.e. a defendant, may be presented as evidence at trial. Ohio Evid.R. 801(D)(2).

{¶ 80} This assignment of error is without merit for multiple reasons. Firstly, we find that Creech forfeited his Evid.R. 404(B) argument on appeal. Again, "[a] first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 14, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, (1997). "This court has consistently applied this principle by finding 'a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived.'" *State v. Salem*, 2023-Ohio-2914, ¶ 19 (12th Dist.), quoting *State v. Keating*, 2020-Ohio-2770, ¶ 27 (12th Dist.).

{¶ 81} At the trial level, Creech only argued that the statement he made to his attorney was protected by attorney-client privilege, an argument rejected by the trial court because the statement was also made in front of Deputy Chellis. Not only is this argument entirely different than arguing the statement was impermissible character evidence, but the trial court was correct that "[c]ommunications between an attorney and his client in the presence of a third person — where the third party is not an agent of either the client or attorney — are not privileged." *12312 Mayfield Rd., LLC v. High & Low Little Italy, LLC*,

2024-Ohio-2717, ¶ 15 (8th Dist.); *see also State v. Johnson*, 2014-Ohio-787, ¶ 25 (4th Dist.) ("[G]enerally speaking, statements directed toward third parties and overheard by law enforcement do not amount to a circumvention of [a defendant's rights].").

**{¶ 82}** Therefore, we find Creech's Evid.R. 404(B) argument is forfeited.

**{¶ 83}** Even assuming Creech's Evid.R. 404(B) argument was not forfeited, Creech's statement was not evidence of another crime, indicating his current guilt, but a party-opponent admission that was demonstrative of Creech's ability, intent, preparation, plan, motive, and desire to make methamphetamine. This made the statement admissible at trial under Rules 404(B)(2) and 801(D)(2).

**{¶ 84}** Finally, even if it was error to admit Deputy Chellis' testimony (and we reiterate it was not), the error was harmless. "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 2014-Ohio-5052, ¶ 32; *State v. Carpenter*, 2023-Ohio-2523, ¶ 74 (12th Dist.). Here, if we removed the statement overheard by Deputy Chellis from the evidence presented at trial, there was still overwhelming evidence of Creech's guilt. Officers still apprehended Creech with various items in his backpack, including Sudafed tablets, lithium batteries, lighter fluid, and a jerry-rigged glass jar, and the expert testimony of Captain Hatfield illustrated how this collection of items is commonly used to make methamphetamine.

**{¶ 85}** We overrule Creech's fourth assignment of error.

### G. Cumulative Error

**{¶ 86}** Creech argues the purported errors discussed within his third and fourth assignments of error amount to cumulative error.

**{¶ 87}** "Under the doctrine of cumulative error[], a reviewing court 'will reverse a

conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal.'" *State v. Akladyous*, 2023-Ohio-3105, ¶ 60 (12th Dist.), quoting *State v. Kirkland*, 2014-Ohio-1966, ¶ 140. "The cumulative error doctrine is inapplicable when there are not multiple instances presented of harmless error." *State v. Froman*, 2022-Ohio-2726, ¶ 200 (12th Dist.), citing *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168 (1995).

**{¶ 88}** Here, we found, with respect to Creech's third assignment of error, that the trial court did not err when it denied Creech's request for a mistrial and that it properly instructed the jury regarding Chief Spurlock's statements about Creech's silence and request for counsel and regarding Creech's right not to testify. We found, with respect to Creech's fourth assignment of error, that Deputy Chellis' testimony was properly admitted at trial.

**{¶ 89}** Having found no errors, Creech cannot demonstrate cumulative error. *Froman* at ¶ 200. To the extent Creech's third and fourth assignments of error assert cumulative error, those assignments are overruled on this additional basis.

### H. Denial of Creech's Rule 29 Motion

**{¶ 90}** Creech's fifth assignment of error states:

> THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29.

**{¶ 91}** On appeal, Creech argues the trial court erred in denying his Crim.R. 29 motion for acquittal because "no evidence was submitted that [Creech] possessed any 'chemical'" that would make him guilty of illegal assembly or possession of chemicals. We note that although Creech frames his assignment of error under Crim.R. 29, he argues within the assignment of error that his conviction was not supported by sufficient evidence

*and* that it was against the manifest weight of the evidence. We will address both of these standards of review below.

### 1. Standards of Review

{¶ 92} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion under the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Maloney*, 2023-Ohio-2711, ¶ 40 (12th Dist.), citing *State v. Mota*, 2008-Ohio-4163, ¶ 5 (12th Dist.); *State v. Huston*, 2007-Ohio-4118, ¶ 5 (12th Dist.).

{¶ 93} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31, citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 94} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Madden* at ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the

conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 95} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 14 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 96} "Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

## 2. Analysis

{¶ 97} Creech was convicted of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A). That statute states, "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II . . ." Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." Methamphetamine is a Schedule II drug. Adm.Code 4729:9-1-02(C)(2).

{¶ 98} "Chemical" is not defined by R.C. Chapter 2925. When terms are not defined in a statute, "we afford the terms their plain, everyday meanings, looking to how such words are ordinarily used . . . This work includes reading words in their context and construing them 'according to the rules of grammar and common usage.'" *State ex rel. MORE Bratenahl v. Village of Bratenahl*, 2019-Ohio-3233, ¶12, citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8-10, quoting R.C. 1.42. "Chemical" is commonly defined as "a substance obtained by a chemical process or producing a chemical effect." *Chemical*, Merriam-Webster.com Dictionary, *https://www.merriam-webster.com/dictionary/chemical* (Accessed Oct. 28, 2024).

{¶ 99} Creech was arrested and found to have glue sticks, electrical tape, Sudafed tablets, lithium batteries, a butane lighter head, lighter fluid, and a container with tubes coming out of it on his person and inside his backpack. The Sudafed tablets, lithium batteries, and lighter fluid are "obtained by a chemical process" or are otherwise capable of "producing a chemical effect," and can be used in the manufacture of methamphetamine. *State v. Rowley*, 2017-Ohio-5850, ¶ 53-55 (12th Dist.); *State v. Weckner*, 2002 WL 371948, 2002-Ohio-1012, *2, 6 (12th Dist. 2002); *State v. Isaac*, 2016-Ohio-7376, ¶ 33 (5th Dist.).[5] Indeed, Captain Hatfield—who the parties stipulated was an expert in the field of

---

5. {¶a} In *State v. Rowley*, we found that a book bag containing "a syringe, a digital scale, several plastic bags, plastic bottles which appeared to contain an organic solvent, cold packs, ammonium nitrate, lithium batteries, and vice grips" overwhelmingly supported a jury's finding that the defendant knowingly assembled or possessed chemicals that could be used to manufacture methamphetamine. 2017-Ohio-5850, ¶ 53-55.

{¶b} In *State v. Weckner*, we found that a jury could conclude that the defendant possessed "ingredients and tools necessary to manufacture methamphetamines" when the defendant was found with "a plastic gas can, coffee filters, drain cleaner, plastic bottle with a hose taped to it, glass mason jars with substances in them, rubber gloves, batteries, starter fluid, Drain-o, salt and a plastic milk crate filled with mason jars." 2002-Ohio-1012, *2.

{¶c} In *State v. Isaac*, the Fifth District Court of Appeals found that various bottles, "peeled lithium batteries, cold packs-ammonia nitrate, Coleman fuel, coffee filters with residue, and rubber tubing with residue" were "consistent with the manufacture and possession for chemicals necessary for the manufacture of methamphetamine." 2016-Ohio-7376, ¶ 33.

methamphetamine lab identification and remediation—testified the substances and items found on Creech could be used to "cook" methamphetamine inside the jerry-rigged bottle also found with Creech. While Captain Hatfield admitted on cross-examination that such items can obviously be used for other purposes, we find that the jury could conclude, based on the evidence before it, that Creech possessed this collection of substances and items for the purpose of manufacturing methamphetamine. *State v. Seldon*, 2013-Ohio-819, ¶ 24 (8th Dist.).

{¶ 100} Any doubt as to Creech's intent was eliminated by Creech's pretrial statement that "[I] make meth . . . [I am] going to continue to make meth, that's what [I do]. Once [I] leave[ ], [I am] gonna [sic] make meth again." For these reasons, we find that the manifest weight of the credible evidence presented at trial supported the jury's conclusion that Creech was guilty of illegal assembly or possession of chemicals. This is not one of the exceptional cases where the jury's verdict weighed heavily against the evidence. *Zitney*, 2021-Ohio-466 at ¶ 15.

{¶ 101} Having found that the trial court's verdict was not against the manifest weight of the evidence, we also find that Creech's challenge to the sufficiency of the evidence is without merit. *Billingsley*, 2020-Ohio-2673 at ¶ 15. Likewise, the trial court did not err in denying Creech's Crim.R. 29 motion. *Maloney* at ¶ 40.

{¶ 102} We overrule Creech's fifth assignment of error.

### IV. Conclusion

{¶ 103} Having overruled all seven of Creech's assignments of error, we affirm Creech's conviction.

{¶ 104} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.