[Cite as *State v. Dunn*, 2022-Ohio-4136.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-01-001 |
| | : | O P I N I O N |
| - vs - | | 11/21/2022 |
| | : | |
| ASHLEY R. DUNN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20210092

Nicholas A. Adkins, Madison County Prosecuting Attorney, Rachel M. Price, and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Culp, Parsons, and Murray LLC, and Joshua W. Beasley, for appellant.

**BYRNE, J.**

{¶1} The Madison County Court of Common Pleas convicted Ashley Dunn of several drug offenses. Dunn appealed, arguing that the trial court should have granted, rather than denied, her motion to suppress certain evidence. For the reasons described below, we affirm the trial court's suppression decision and Dunn's convictions.

**I. Factual and Procedural Background**

{¶2} A Madison County grand jury indicted Dunn on two counts of illegal

conveyance of drugs, one count of trafficking, and one count of aggravated trafficking. The charges arose after Madison County Sheriff's Deputy Tyler Martin, responding to a report of trespassing in the parking lot of Ohio's Bureau of Criminal Investigation ("BCI"), encountered Dunn sitting in a vehicle in that parking lot. After arresting Dunn on a pre-existing warrant, Deputy Martin recovered a drone and narcotics in Dunn's vehicle. A subsequent investigation revealed that Dunn had been involved in planning to deliver narcotics to her boyfriend, who was incarcerated in the Madison Correctional Institution—located across the street from BCI—by drone delivery.

### A. Motion to Suppress and Hearing

{¶3}   Prior to trial, Dunn moved to suppress evidence gathered because of her encounter with Deputy Martin. In her motion, Dunn argued that Deputy Martin's interaction with her was not consensual and that Deputy Martin lacked a reasonable and articulable suspicion of criminal activity to detain her for an investigation. Dunn asked the court to suppress the evidence against her because it was gathered in violation of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

{¶4}   The matter proceeded to a suppression hearing. At the hearing, the state submitted the testimony of Deputy Martin and two exhibits: audio recordings of two telephone calls placed by a BCI employee to Madison County Sheriff's Office dispatch, and BCI security camera footage depicting Dunn's vehicle in BCI's parking lot and her interaction with Deputy Martin.

{¶5}   Deputy Martin testified that on April 17, 2021, at approximately 11:15 p.m., a Madison County Sheriff's Office dispatcher directed him to investigate a suspicious vehicle parked in BCI's parking lot in London, Ohio. The state played the recording of the call that led to the dispatch. On it, an individual who identified himself as a BCI employee reported

to the dispatcher that a Honda Pilot was parked in BCI's "front" parking lot, and that the employee did not recognize the vehicle. The employee reported that the vehicle's lights were on.

{¶6} Deputy Martin testified that the dispatcher relayed to him that the BCI employee—whom Deputy Martin identified as a security guard—had reported that "we have a vehicle that's parked in our parking lot we don't recognize" and had provided a description of the vehicle. The second call from the BCI employee was also played at trial.

{¶7} Deputy Martin responded to the parking lot a few minutes after receiving the dispatch. As he was passing the parking lot on the main road that leads to BCI, he observed the Honda Pilot. It was parked at the end of a line of state vehicles and was the only vehicle in that row that had its headlights and taillights illuminated. Deputy Martin turned off the main road and pulled into the driveway that leads to BCI and other government facilities, including the London Correctional Institution. Deputy Martin observed two large "No Trespass" signs as he drove down the driveway. Both signs cited the Revised Code section for trespassing.

{¶8} Security camera footage admitted at the hearing shows that Deputy Martin drove his vehicle into the parking lot and then pulled in front of the Honda Pilot. Deputy Martin shined his spotlight into the Honda Pilot. He then got out, approached the vehicle, and began questioning Dunn, the driver.

{¶9} The remainder of the encounter is not relevant for purposes of this appeal, but we will briefly summarize the events. Deputy Martin questioned Dunn. She eventually provided him with her identifying information, from which Deputy Martin was able to determine that Dunn had an active warrant. Deputy Martin arrested Dunn on the warrant. Afterwards, a K9 officer detected the presence of narcotics in the vehicle and law enforcement searched the vehicle. Law enforcement recovered narcotics and a drone.

**B. Decision on Suppression Motion, Sentence, and Appeal**

**{¶10}** Following the suppression hearing, the trial court issued a written decision denying Dunn's motion to suppress. Relevant to this appeal,[1] the trial court observed that the security camera footage of the stop was inconclusive as to whether Deputy Martin had used his police vehicle to completely block Dunn's vehicle from leaving. As a result, the trial court found that "[g]iven the state of the evidence," the court could not find that Dunn's path was blocked by Deputy Martin's vehicle. As a result, the court found that the interaction between Dunn and Deputy Martin was a consensual encounter and therefore no Fourth Amendment or state constitutional protections were implicated.

**{¶11}** The court further found that even if the encounter was not consensual, it was a lawful, justified *Terry* stop because Deputy Martin had a reasonable articulable suspicion that Dunn had committed a trespass offense. As such, the court concluded that Deputy Martin could briefly detain Dunn for purposes of investigating the trespass offense without violating the Fourth Amendment or state constitutional protections.

**{¶12}** Following the denial of her motion to suppress, Dunn pleaded no contest to the indicted counts. The court accepted the plea and later sentenced Dunn to a prison term. Dunn appealed, raising two assignments of error. We address Dunn's second assignment of error first.

**II. Law and Analysis**

**A. Assignment of Error No. 2:**

**{¶13}** THE TRIAL COURT ERRED WHEN IT HELD THAT THE STOP OF DEFENDANT WAS JUSTIFIED BY REASONABLE AND ARTICULABLE SUSPICION.

---

1. There were other issues raised and decided by the trial court during the suppression proceedings that are not relevant to this appeal. For brevity's sake, we have omitted reference to those issues.

**{¶14}** Dunn contends that the trial court erred in denying her motion to suppress because Deputy Martin had no reasonable basis to form a suspicion that Dunn was engaged in criminal activity.

### 1. Standard of Review and Applicable Law

**{¶15}** "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact." *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 14, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-Ohio-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing a trial court's decision on a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Turner* at ¶ 14. "An appellate court * * * independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

**{¶16}** Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Jimenez*, 12th Dist. Warren No. CA2011-09-103, 2012-Ohio-3318, ¶ 9. Any searches or seizures that occur "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment —subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). An investigative stop, or a *Terry* stop, by a police officer is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S.Ct. 1868 (1968). Under *Terry*, a police officer may detain an

individual without probable cause when the officer has reasonable suspicion based on specific, articulable facts, that criminal activity is afoot. *Id.* at 21. "An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.'" *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 35, quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690 (1981).

{¶17} Reasonable articulable suspicion is "something more than an undeveloped suspicion or hunch" but is less than the level of suspicion required for probable cause. *State v. Hinkston*, 12th Dist. Clermont No. CA2020-03-012, 2020-Ohio-6903, ¶ 18. "Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Hill*, 12th Dist. Warren No. CA2015-05-044, 2015-Ohio-4655, ¶ 10, citing *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). Reasonable and articulable suspicion is determined by evaluating the totality of the circumstances through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Popp*, 12th Dist. Butler No. CA2010-05-128, 2011-Ohio-791, ¶ 13. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002), quoting *Cortez*, 449 U.S. at 418.

{¶18} With certain exceptions not applicable here, the Ohio Supreme Court has held that the Ohio Constitution affords protections coextensive with the Fourth Amendment. *State v. Robinette*, 80 Ohio St.3d 234, 245 (1997); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 23. Accordingly, we apply the same Fourth Amendment analysis to Dunn's claims concerning Article I, Section 14 of the Ohio Constitution. *See State v. Taylor*,

12th Dist. Preble No. CA2001-02-003, 2001 WL 1358752, *5 (Nov. 5, 2001).

## 2. Analysis of Reasonableness of Investigatory Detention

{¶19} Dunn contends that Deputy Martin lacked sufficient information to reasonably suspect that she lacked permission to park her vehicle on BCI's grounds or that she would have knowledge that she was trespassing. We disagree.

{¶20} Based on the totality of the circumstances presented, we find that Deputy Martin had more than an undeveloped suspicion or hunch that Dunn was trespassing. Based on the following facts admitted at the hearing, we conclude that Deputy Martin's suspicions of criminal activity were reasonable and articulable.

{¶21} Testimony and evidence established that a BCI employee called law enforcement dispatch to report an unknown vehicle parked in BCI's parking lot at approximately 11:15 p.m. on a Saturday. A dispatcher conveyed to Deputy Martin that the BCI employee reported the vehicle as "suspicious." The dispatcher further conveyed that it was a BCI security guard who had observed the vehicle, did not recognize the vehicle, and had provided a specific description of the vehicle, i.e., a Honda Pilot. Deputy Martin could reasonably rely on the report of a BCI employee to find that the vehicle was a trespasser on BCI grounds.

{¶22} But the BCI employee's report was not the only information available to Deputy Martin. Deputy Martin testified that he was familiar enough with BCI to know that the time of the suspected trespass – Saturday at 11:15 p.m. – was not within BCI's normal business hours. And it would be a reasonably prudent assumption by anyone that a government agency is not open for business at 11:15 p.m. on a weekend. Thus, the odd hour lent further legitimacy to Deputy Martin's belief that the vehicle was trespassing. Additionally, when Deputy Martin pulled into the main driveway to BCI's parking lot, he passed two signs, placed on both sides of the road, that warned, "No Trespass" and cited

the trespassing section of the Revised Code.

{¶23} Deputy Martin further testified that he was aware that Madison Correctional Facility was across the street from the BCI parking lot and that less than two weeks prior to this incident, he had been dispatched to the same parking lot to investigate a vehicle involved in a "suspected conveyance" to the Madison Correctional Institute. Deputy Martin testified that throughout his career, he had investigated several instances of criminal activity on or around the prisons in Madison County. Given the proximity in time to the most recent conveyance investigation, the location, the time of day, and the BCI employee's suspicion about the vehicle, Deputy Martin also could have reasonably suspected that the trespassing vehicle may have been involved in an attempt to convey contraband to the two nearby prisons.

{¶24} The foregoing more than demonstrates that Deputy Martin possessed specific and articulable facts, which, when taken together, with rational inferences from those facts, reasonably warranted him in suspecting that a criminal trespass offense was occurring on BCI property, and which justified him in briefly detaining Dunn for purposes of investigation. *Hill*, 2015-Ohio-4655 at ¶ 10.

{¶25} As noted above, Dunn also argues that Deputy Martin did not have sufficient information to reasonably suspect that Dunn had knowledge that she was trespassing. Dunn bases this argument on the language of the trespassing statute, which provides that a person may not "without privilege to do so * * * *Knowingly* enter or remain on the land or premises of another." R.C. 2911.21(A)(1). (Emphasis added.) This argument also fails. Dunn cites no authority for the proposition that an officer must have reasonable, articulable suspicion regarding the knowledge element of a trespassing offense in order to conduct a *Terry* stop of someone believed to be trespassing. In any event, even if Dunn could point to legal authority supporting his argument, then based on the time of day, Dunn's location

on BCI property, and the fact that Dunn must have driven past the "No Trespass" signs—we find that Deputy Martin could have reasonably suspected that Dunn knew she was trespassing. The *Terry* stop was lawful. We overrule Dunn's Assignment of Error No. 2.

### B. Assignment of Error No. 1:

{¶26} THE TRIAL COURT ERRED WHEN IT HELD THAT THE STOP OF DEFENDANT WAS A CONSENSUAL ENCOUNTER AND NOT AN "INVESTIGATE DETENTION."

{¶27} In Assignment of Error No. 1, Dunn argues that a reasonable person in her position would not have felt free to leave after Deputy Martin arrived on scene, and therefore the court erred when it concluded that the encounter was consensual. Dunn bases her argument in large part on the location where Deputy Martin parked his police cruiser relative to her vehicle. However, because we have already determined above that Deputy Martin possessed a reasonable basis to detain Dunn for purposes of investigating a criminal trespass offense, the issue of whether the encounter was consensual is moot. We need not address an assignment of error made moot by another assignment of error. App.R. 12(A)(1)(c). *Accord State v. Norris*, 12th Dist. Clermont No. CA2021-02-008, 2021-Ohio-4177, ¶ 28. We therefore decline to address Dunn's Assignment of Error No. 1.

### III. Conclusion

{¶28} We find that Deputy Martin had a reasonable suspicion of criminal trespassing, based on specific, articulable facts, which justified his investigatory detention of Dunn. The trial court therefore did not err in denying Dunn's motion to suppress.

{¶29} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.