[Cite as *State v. Wood*, 2025-Ohio-2273.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2024-02-002 |
| | | CA2024-02-003 |
| | : | |
| - vs - | | OPINION AND |
| | : | JUDGMENT ENTRY |
| | | 6/30/2025 |
| BRANDI WOOD, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case Nos. CRI 20230101 & CRI 20230153


Jess Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


## O P I N I O N


**BYRNE, P.J.**

{¶ 1} Appellant, Brandi Wood, appeals her convictions in the Fayette County Court of Common Pleas in two separate cases, Case No. CRI20230101 (hereinafter

"Case 1") and Case No. CRI20230153 (hereinafter "Case 2"). We sua sponte consolidated those cases for purposes of this appeal. For the reasons discussed below, we affirm.

## I. Factual and Procedural Background

{¶ 2} On September 28, 2022 and October 5, 2022, Wood engaged with a police confidential informant ("CI") to sell methamphetamine. The CI was outfitted with a surveillance device that recorded audio and video of her interactions with Wood on the phone, at Wood's apartment, and at the CI's apartment. The device captured their conversations about the CI planning to purchase methamphetamine from Wood, as well as the sales transactions themselves in Wood's apartment.

{¶ 3} On April 7, 2023, Wood was indicted by the Fayette County Grand Jury in Case 1 for (1) one count of second-degree felony aggravated trafficking in drugs, (2) two counts of first-degree felony aggravated trafficking in drugs, and (3) one count of first-degree felony engaging in a pattern of corrupt activity. One of the first-degree felony aggravated trafficking in drugs counts was accompanied by a major drug offender specification.

{¶ 4} On April 11, 2023, an arrest warrant was executed for Wood at her apartment. A camera inside Wood's apartment recorded the event. Officers knocked on the door and Wood eventually answered, stepped outside, and the door started to shut behind her. An officer immediately propped the door open, and the police, concerned that cartel members could be inside, asked for anyone else present in the apartment to come out. While still standing outside the apartment, a police officer shined a light inside the apartment and observed marijuana, drug paraphernalia, and weighing scales in plain view on the table inside. The police then asked Wood for consent to make a security sweep of

her apartment to look for other individuals and Wood consented. The sweep lasted 90 seconds. The police then waited outside to get a search warrant. Once the search warrant was signed, the police thoroughly searched the apartment and seized a safe. A search warrant was obtained to open the safe but, during an interview with Wood, she provided the code to the safe. Inside, the police found methamphetamine in multiple bags, totaling 325.72 grams.

{¶ 5} On June 16, 2023, based on the search of Wood's apartment, Wood was indicted in Case 2 by the Fayette County Grand Jury for a single count of first-degree felony aggravated possession of drugs and an accompanying major drug offender specification.

{¶ 6} Wood filed motions through counsel in both cases to suppress the drugs and other evidence related to the charges. However, Wood also attempted to file several motions pro se while counsel was still appointed. On January 3, 2024, a hearing was held for both cases and the trial court informed Wood that she could not have hybrid representation. Hybrid representation occurs when the "defendant and counsel act as co-counsel, sharing responsibilities in preparing and conducting trial." *State v. Martin*, 2004-Ohio-5471 ¶ 29. Wood put on the record that she wanted to fire her attorney because he would not file the motions and make the arguments she wanted. The trial court advised Wood that she had the right to represent herself but warned her of the seriousness of her offenses and the difficulty of representing oneself pro se. Wood then stated "I'll go ahead and proceed," and the trial court asked if she meant she wanted to proceed with her appointed attorney, and Wood replied, "yelp." The trial court then proceeded to hear argument on Wood's motion to suppress in Case 2 and testimony from the lead detective during the apartment search. In an entry journalized on January 3, 2024, the trial court

denied Wood's motion to suppress in Case 2.

{¶ 7} On January 22, 2024, Wood appeared for a plea hearing for both cases, but informed the trial court she wished to proceed pro se. The trial court engaged in a colloquy with Wood and informed her that she would have to comply with the trial court's rules and the rules of criminal procedure. Wood then signed a form waiving the right to counsel.

{¶ 8} On February 13, 2024, Wood appeared pro se for her jury trial in Case 2, with standby counsel available. Prior to opening statements, Wood opted to have standby counsel appointed to represent her. The jury found Wood guilty for the single count in Case 2, and the trial court sentenced her to an indefinite prison term of 11 to 16.5 years. During sentencing, Wood informed the trial court that she wanted to proceed with appointed counsel in Case 1.

{¶ 9} On February 22, 2024, the trial court held a hearing on Wood's motion to suppress in Case 1. The trial court heard testimony from the lead detective in the investigation on the use of the CI to purchase drugs from Wood. In an entry journalized on February 23, 2024, the trial court denied Wood's motion to suppress in Case 1. Thereafter, the trial court accepted a no contest plea to the counts of the indictment in Case 1 and found Wood guilty. Wood was sentenced to a term of 27 to 32.5 years in prison in Case 1, to be served consecutively with her sentence in Case 2, for a total of 38 to 49 years.

{¶ 10} Wood appealed, raising five assignments of error for our review.

## II. Legal Analysis

### A. Motion to Suppress in Case 1

{¶ 11} Wood's Assignment of Error No. 1 states:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTIONS TO SUPPRESS IN CASE NO.

CRI20230101 IN VIOLATION OF HER FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ART. I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 12} In her first assignment of error, Wood asserts that the trial court erred by not suppressing the surveillance footage and drugs obtained by the CI in Wood's apartment. In support, Wood argues that the CI entered Wood's apartment without permission, since the CI did not knock on the door first, and therefore the CI's entry and surveillance recording constituted an unlawful search. We disagree.

**1. Applicable Law**

{¶ 13} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution prohibit unreasonable searches and seizures. *State v. Dunn*, 2022-Ohio-4136, ¶ 16 (12th Dist.). "Any searches or seizures that occur 'outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.*, quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). With certain exceptions not applicable here, the Ohio Supreme Court has held that the Ohio Constitution affords coextensive protections with the Fourth Amendment. *State v. Robinette*, 80 Ohio St. 3d 234, 245 (1997); *State v. Brown*, 2015-Ohio-2438, ¶ 23. Accordingly, we apply the same Fourth Amendment analysis to Wood's claims concerning Article I, Section 14 of the Ohio Constitution. See *Dunn* at ¶ 18.

{¶ 14} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 2012-Ohio-4769, ¶ 15 (12th Dist.). When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. S*tate v. Hensgen*, 2017-Ohio-8793, ¶ 16 (12th Dist.). In turn, this court is bound

to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* If the trial court's findings of fact are so supported, "the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 2003-Ohio-5372, ¶ 8.

**{¶ 15}** Where a defendant knowingly and voluntarily invites an informant into his residence for the purpose of conducting illegal business, the defendant, by extending the invitation, voluntarily exposes himself to a warrantless search." *See State v. Heriot*, 2005 Ohio-2374, ¶ 11 (12th Dist.). Voluntariness, express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). A trial court's finding that there was an implicit invitation can be supported by the defendant's lack of surprise when an informant arrives, conversation that indicates a prearranged meeting, and predetermined prices that indicate a prearranged transaction. *See State v. Baker*, 2024-Ohio-2856, ¶ 14 (12th Dist.).

**{¶ 16}** Here, the detective coordinating with the CI testified that the CI had prearranged the drug purchase and the surveillance recordings of the CI's interactions with Wood confirm this. First, the recording shows a phone call between the CI and Wood regarding the drug deal. Then, when the CI arrived at the apartment, she let herself into the apartment through the front door and immediately encountered Wood sitting in the living room. Wood did not act surprised, ask why the CI had come, or ask the CI to leave. Instead, they engaged in casual conversation. Later that day, Wood visited the CI's apartment and they discussed making a drug deal at Wood's apartment. The two of them then returned to Wood's apartment, driving separate vehicles. Another phone conversation was recorded in which Wood told the CI she had half a pound of

methamphetamine to sell her. Upon arrival, the CI again let herself into Wood's apartment, Wood reacted like everything was normal, and Wood sold the CI the drugs.

{¶ 17} Wood's reaction to the CI on October 5, 2022 was the same. The CI once again entered the apartment by letting herself in, and Wood again acted as if the CI was welcome and exchanged a lockbox filled with methamphetamine for cash. There was minimal conversation, which indicated the deal had already been discussed and prearranged. The evidence in the record clearly establishes that the CI's entries into Wood's apartment were consensual.

{¶ 18} We overrule Wood's first assignment of error.

**B. Motion to Dismiss in Case 2**

{¶ 19} Wood's Assignment of Error No. 2 states:

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTIONS TO SUPPRESS IN CASE NO. CRI20230153 IN VIOLATION OF HER FOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ART. I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 20} In her second assignment of error, Wood asserts that the trial court erred by not suppressing evidence obtained during the search of her apartment on April 11, 2023. She specifically argues that she did not give consent to the police to enter for a protective sweep subsequent to her arrest, and that had the police not entered, they would not have seen the drug paraphernalia. It was this view of the drug paraphernalia that created probable cause for the search warrant the police later obtained and executed. We disagree with Wood's argument.

{¶ 21} At the suppression hearing, the lead detective testified that when the arrest warrant was served, the investigation had already indicated that Wood likely had cartel ties, based on bank transaction records and information received from the Department of

Homeland Security. Therefore, the arresting officers were concerned that cartel members might be present at Wood's apartment. Once Wood came outside to be arrested, a police officer caught the front door before it closed and held it open, calling for anyone inside to come out. Holding open a door to maintain visual awareness and ensure officer safety does not violate the Fourth Amendment or Article I, Section 14 of the Ohio Constitution, as officer safety outweighs the slight invasion that the visual search from the threshold entails. *State v. Fletcher*, 2017-Ohio-1006, ¶ 35-39 (defendant's fourth amendment rights were not violated when police officer pushed and held open defendant's partially opened front door to ensure no one was standing behind the door with a gun); *see also State v. Mott*, 2023-Ohio-2268, ¶ 46 (holding that consent is not necessary for a brief protective sweep of premises to protect the safety of police officers or to protect against the destruction of evidence by unknown, potential occupants). The detective testified that from the doorway, he and the other officers could see drug paraphernalia in plain view, creating probable cause to obtain a search warrant.

{¶ 22} Wood's second assignment of error is overruled.

**C. Hybrid Representation**

{¶ 23} Wood's Assignment of Error No. 3 states:

DEFENDANT-APPELLANT WAS DENIED HER CONSTITUTIONALLY GUARANTEED RIGHT TO EFFECTIVE HYBRID REPRESENTATION UNDER OHIO CONSTITUTION, ARTICLE I, SECTION 10.

{¶ 24} According to the Ohio Supreme Court, in this state "a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." *Martin*, 2004-Ohio-5471, at ¶ 32.

{¶ 25} In this appeal, Wood requests that we reconsider whether she has a

constitutional right to hybrid representation under Article I, Section 10 of the Ohio Constitution. That provision states, in pertinent part, that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person *and* with counsel." (Emphasis added). Wood argues that the conjunctive language of that constitutional provision suggests that the Ohio Constitution guarantees the right to hybrid representation. She relies on the reasoning set forth in a concurring opinion in *State v. Hackett*, 2020-Ohio-6699, ¶ 34 (Fischer, J., concurring). *See also State v. Parker*, 2022-Ohio-1285, ¶ 3 (Fischer, J., concurring). But longstanding precedent provides that a defendant does *not* have any right to "hybrid representation" under the Ohio Constitution. *State v. Francis*, 2024-Ohio-5547, ¶ 5, citing *Martin* at ¶ 31.

**{¶ 26}** Wood only made her hybrid representation argument for the first time on appeal. In the trial court, Wood attempted to file pro se motions without first firing her appointed counsel. When the trial court informed her that hybrid representation was not permitted, Wood only stated that she wanted to fire her attorney and represent herself pro se, and gave no specific indication or argument that she should be able to represent herself in tandem with appointed counsel. Wood may not raise this issue for the first time on appeal. *Francis* at ¶ 8. She has failed to preserve the issue for appeal.

**{¶ 27}** We overrule Wood's third assignment of error.

### D. Self-Representation

**{¶ 28}** Wood's Assignment of Error No. 4 states:

> THE DEFENDANT-APPELLANT WAS DENIED HER CONSTITUTIONALLY GUARANTEED RIGHT TO SELF-REPRESENTATION UNDER OHIO CONSTITUTION, ARTICLE I, SECTION 10.

**{¶ 29}** In her fourth assignment of error, Wood argues the trial court denied her constitutional right to self-representation because it only provided standby counsel as a

potential fill-in should Wood give up on her self-representation. Wood contends that the conjunctive language of Article 1, Section 10 indicates that standby counsel should have a greater advisory role to a pro se defendant, and such a defendant has a right to "effective standby counsel." Finally, Wood argues that the trial court impaired her self-representation by forcing her into a binary choice between representing herself or having standby counsel represent her. We disagree.

**{¶ 30}** As we explained above, Ohio Supreme Court precedent dictates that a criminal defendant may not assert a right to counsel and self-representation simultaneously. *Martin* at ¶ 32. Although a trial court may choose to appoint standby counsel, "there is no independent right, under state or federal law, to standby counsel in the event that a criminal defendant chooses self-representation." *State v. Hundley*, 2020-Ohio-3775, ¶ 99. Further, "[t]he assertion of the right to self-representation must be clear and unequivocal." *State v. Powell*, 2019-Ohio-4398, ¶ 11 (12th Dist.).

**{¶ 31}** Here, Wood was given the right to self-representation in both of her criminal cases and she initially attempted to represent herself in the jury trial for Case 2. However, during opening statements, Wood changed her mind and opted to have standby counsel represent her for Case 2. During sentencing for Case 2, she informed the trial court that she wanted standby counsel to represent her for Case 1 going forward. After Wood chose to have standby counsel represent her, she never unequivocally asserted her right to represent herself again. Therefore, the trial court did not deny Wood her right to self-representation.

**{¶ 32}** We overrule Wood's fourth assignment of error.

### E. Guilty Finding

**{¶ 33}** Wood's Assignment of Error No. 5 states:

THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-
APPELLANT GUILTY WHEN SHE DID NOT ENTER A PLEA
OF NO CONTEST ON THE RECORD IN CASE NO.
CRI20230101.

**{¶ 34}** In her fifth assignment of error, Wood argues that the trial court erred by finding her guilty when only her attorney orally entered a no contest plea onto the record at the plea hearing in Case 1, and not Wood herself. We disagree.

**{¶ 35}** During the plea hearing in Case 1, the state provided a statement of facts. The trial court inquired of Wood if the statement described what happened and advised her that for the purposes of a no contest plea she would be admitting the basic facts as far as the statement went. The trial court also advised Wood of the constitutional rights she would be waiving, as well as the maximum possible punishment, and asked her if she understood. Wood stated she understood. Wood's attorney was then asked how Wood pleaded, to which counsel responded, "no contest." Wood had also signed a written Waiver and Plea Agreement which reflected that she was pleading no contest to the charges. Counsel then provided the trial court with the executed Waiver and Plea Agreement, upon which the trial court accepted the no contest plea and found Wood guilty.

**{¶ 36}** In support of her argument, Wood cites our opinion in *State v. Muhire*, 2023-Ohio-1181 (12th Dist.), in which we reversed a no contest plea where Muhire never orally entered a no contest plea in the record. *Id.* at ¶ 2-8, 16-17. However, *Muhire* differs from this case in that neither Muhire personally nor his counsel entered a no contest plea, written or oral, and the record indicated that Muhire, defense counsel, the state, and the trial court all did not understand what charge Muhire was pleading to. *Id.* at ¶ 15. As a result, in that case, Muhire's plea was not knowingly, intelligently, or voluntarily entered. *Id.* In this case, the record is clear that a no contest plea was entered by counsel on

Wood's behalf after the trial court engaged in a full Crim.R.11 colloquy with Wood personally, and Wood stated that she understood. Additionally, her attorney provided the trial court with her signed written Waiver and Plea Agreement which stated she was pleading no contest to the charges.

{¶ 37} We have previously held that "[a]lthough the preferred practice is for the trial court to have the accused personally vocalize a plea, a guilty plea entered by counsel has the same force and effect as a plea personally entered by the accused where the accused is present and the circumstances are such as to show clearly that the accused understands what is being done and acquiesces therein." *See Fairfield v. Hamilton*, 2009-Ohio-6551, ¶ 11 (12th Dist.) (guilty plea entered by defendant's counsel was valid where the circumstances showed defendant understood and acquiesced), citing *State v. Keaton*, 2000 WL 20850, *5 (2d Dist. Jan. 14, 2000). The same reasoning applies to a no contest plea. *State v. Beddow*, 2002-Ohio-910 (2d Dist.), ¶ 6-7 (no contest plea entered by defendant's counsel was valid where the defendant engaged in a Crim.R. 11 colloquy with the trial court and personally signed an entry of waiver and plea). Wood's colloquy with the court and signed written Waiver and Plea Agreement demonstrate that Wood understood that a no contest plea was being entered and that she acquiesced.

{¶ 38} We overrule Wood's fifth assignment of error.

### III. Conclusion

{¶ 39} We find no merit to any of Wood's assignments of error.

{¶ 40} Judgment affirmed.


HENDRICKSON and M. POWELL JJ., concur.

- 12 -

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Fayette County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Mike Powell, Judge